UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

WORLDWIDE HOME PRODUCTS, INC.,

           Plaintiff,

    -v-

TIME, INC., BED BATH AND BEYOND, INC.,
COHESION PRODUCTS, INC., and SHERRY
HANSON

           Defendants.

----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED: DEC 2 1 2012

No.  11 Civ. 03633 (LTS)(MHD)

## MEMORANDUM OPINION AND ORDER

Plaintiff Worldwide Home Products, Inc. ("Plaintiff" or "Worldwide") bring this action against Defendants Bed Bath and Beyond, Inc. ("BB&B"), and Cohesion Products, Inc. ("Cohesion"), alleging patent infringement, and against Time, Inc. ("Time"), and Sherry Hanson ("Hanson"), alleging inducement of patent infringement.  Time and Hanson (hereinafter, "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Worldwide's claims against them for failure to state a claim on which relief can be granted.  The Court has jurisdiction of this matter under 28 U.S.C. § 1331.  The Court has considered carefully all of the parties' arguments and submissions.  For the following reasons, Defendants' motion is granted.

## BACKGROUND

Unless otherwise indicated, the following facts are taken from Plaintiff's Amended Complaint ("Am. Compl.") and are assumed to be true for the purposes of this motion

practice. Worldwide produces, markets and sells a hanger product (the "Clutterfree Hanger") that embodies the invention claimed in Patent No. US 7,938,300 ("'300 Patent"). (Am. Compl. ¶ 12.) Worldwide filed its patent application on July 7, 2008, with the United States Patent and Trademark Office for a "Nestable Hanger with Integrated Cascade Hook" (the "'351 Application"). (Id. ¶ 10.) On June 1, 2009, Worldwide met with BB&B personnel, including Hanson, who was a Buyer at BB&B; Worldwide provided samples of its Clutterfree Hanger and informed BB&B of its pending '351 Application. (Id. ¶¶ 13-14.) For some period after June 1, 2009, BB&B purchased the Clutterfree Hanger from Worldwide and offered it for sale. (Id. ¶ 15.) At some time after June 1, 2009, BB&B halted its purchase and sale of the Clutterfree Hanger and began carrying a substitute product known as the "Real Simple" brand "Slimline Hanger." (Id. ¶¶ 16-22.) BB&B purchased the Slimline Hanger from Cohesion. (Id. ¶ 30.) At some time after June 1, 2009, Hanson told Worldwide: "I'm sure you will be calling me about the [substitute product] hangers after you see what I decided to go with." (Id. ¶ 17.) The Complaint alleges, on information and belief, that Hanson encouraged BB&B to purchase and sell the Slimline Hanger, with the knowledge that "the sale infringed on Worldwide's patent." (Id. ¶ 21.)

Time owns trademark rights in the "Real Simple" brand and allows Cohesion to sell the Slimline Hanger under a trademark licensing agreement, which includes a provision allowing Time to terminate the license. (Id. ¶¶ 23-25.) In a letter dated February 4, 2010, Worldwide provided notice to BB&B and Time that the Slimline Hanger fell within the scope of its pending '351 Application, and BB&B forwarded the letter to Cohesion. (Id. ¶¶ 26, 32-33.) In letters dated March 2, 2010, and April 27, 2011, Cohesion informed Worldwide that it was aware of the '351 Application and that the patent was scheduled to issue on May 10, 2011. (Id.

¶¶ 35-36.) The Complaint also alleges, on information and belief, that BB&B was aware that the

'351 Application was set to issue on May 10, 2011. (Id. ¶ 39.)[1]

DISCUSSION

In deciding a Rule 12(b)(6) motion, the Court accepts as true the non-conclusory

factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.

Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662

(2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id. at 678.

Claims Against Hanson

35 U.S.C. § 271(b) provides that "whoever actively induces infringement of a

patent shall be liable as an infringer." 35 U.S.C.A. § 271(b) (West 2009). To state a claim for

inducement to infringe, a patent holder must pleads facts sufficient to establish (1) direct

infringement, and (2) that the alleged infringer "knowingly induced infringement and possessed

specific intent to encourage another's infringement." MEMC Elec. Materials, Inc. v. Mitsubishi

Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005); see also Global-Tech Appliances,

Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011) ("induced infringement under § 271(b) requires

knowledge that the induced acts constitute patent infringement").

A plaintiff cannot state an inducement of infringement claim under § 271(b)

---

[1]     On May 10, 2011, the USPTO approved Worldwide's application and granted the
'300 Patent. (Id. ¶ 11.)

based on acts that occurred prior to the issuance of the patent.  Nat'l Presto Indus. v. West Bend Co., 76 F.3d 1185, 1196 (Fed. Cir. 1996) (rejecting plaintiff's argument that an inducement of infringement claim could lie where "acts of inducement [were] committed before patent issuance, when the actor not only had the knowledge that a patent application is pending, but also had the intent that as a direct result of its actions there would be direct infringement by others after patent issuance").  The Complaint alleges that Hanson encouraged BB&B to purchase and sell the Slimline Hangers, a practice which began "shortly after the June 1, 2009." It does not allege that Hanson committed any acts of inducement after the patent's issuance, two years later in May 2011.

Plaintiff argues that Nat'l Presto Industries was legislatively abrogated by 35 U.S.C. § 154(d).  Section 154(d), which was added in 1999, permits a patent holder (in certain circumstances) to collect royalties for acts of exploitation undertaken after a patent application is filed but before its issuance.  It does not, however, afford the patent holder any other avenue of relief for exploitation during that period.  Nor is the Court aware of any post-1999 opinions holding that Nat'l Presto Industries is no longer good law.  To the contrary, numerous courts recognize its continued validity.  See, e.g., Nazomi Communications, Inc. v. Nokia Corp., No. 10 Civ. 4686, 2011 WL 2837401 (N.D. Cal. July 14, 2011); Holmberg v. Stealth Cam, LLC, No. 11 Civ. 248(DWF), 2011 WL 3418230 (D. Minn. Aug. 4, 2011); Trustees of Columbia Univ. in City of New York v. Roche Diagnostics GmbH, 150 F. Supp.  2d 191, 208 (D. Mass. 2001).

Accordingly, the claims against Hanson are dismissed.

Claims Against Time

Plaintiff argues that Time induced Cohesion to infringe the '300 Patent by failing to terminate its licensing agreement after discovering that Cohesion was selling a Real Simple-

branded product that "fell within the scope of the '351 Application and the subsequently issued '300 Patent." (Am. Compl. ¶ 27.)

As explained above, for the claims against Time to survive, Plaintiff must plead (1) that Time's acts of inducement took place <u>after</u> the patent was issued, and (2) that Time acted with specific intent to induce infringement. <u>Warner-Lambert Co. v. Apotex Corp.</u>, 316 F.3d 1348, 1364 (Fed. Cir. 2003) ("mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven").

Plaintiff cites one decision in support of its contention that Time faces liability for induced infringement by reason of its failure to terminate the licensing agreement with Cohesion. That decision held in relevant part:

> A trademark licensor faced with an allegation of infringement with respect to a product bearing its mark is presented with a choice between honoring its licensing agreement or possible liability for infringement. In these circumstances, the proper balance between these competing concerns requires a trademark owner to terminate a licensing agreement only <u>where no basis exists for a good faith, reasonable belief that there is no infringement of a valid patent. Only if no such basis exists, must a trademark owner prohibit further use of its mark on the accused product</u>. This test strikes the proper balance between a trademark owner's contractual licensing obligations and its duty to refrain from aiding and abetting the infringement of a patent.

<u>Black & Decker (US) Inc. v. Catalina Lighting, Inc.</u>, 953 F. Supp. 134, 141 (E.D. Va. 1997) (emphasis added).

The Complaint fails to plead facts showing that Time acted with the requisite culpable state of mind. The Complaint alleges that Worldwide notified Time in February 2010 that the Slimline Hanger fell within the scope of the '351 Application. It does not allege that it informed Time, or that Time was otherwise aware, that the patent application was approved in May 2011. Nor does it allege facts sufficient to support the inference that Time lacked a good faith basis to believe that the Slimline Hanger did not infringe the '300 Patent.

Accordingly, Defendants' motion to dismiss the claim against Time is granted.

## CONCLUSION

For the foregoing reasons, Hanson and Time's motion to dismiss the Amended complaints against them is granted.  This Memorandum Opinion and Order resolves docket entry number 92.

SO ORDERED.

Dated: New York, New York
      December 21, 2012

LAURA TAYLOR SWAIN
United States District Judge