UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WORLDWIDE HOME PRODUCTS, INC.,

        Plaintiff and
        Counterclaim-Defendant,

-v-                                 No. 11 Civ. 3633 (LTS)(MHD)

TIME INC., et al,

        Defendant and
        Counterclaim-Plaintiffs..

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Worldwide Home Products, Inc., ("Plaintiff" or "Worldwide"), brings this suit against Defendants Bed, Bath and Beyond, Inc., and Cohesion Products Inc. ("Defendants"), for patent infringement, claiming that the "Real Simple Slimline Hanger" ("Slimline Hanger") infringes upon U.S. Patent No. 7,938,300 (the "300 Patent"). On June 4, 2012, the Court held a Markman hearing regarding the construction of certain terms in the claims of the '300 patent. The Court has considered thoroughly all of the parties' written submissions and their argumentation at the hearing concerning the disputed claim construction issues. For the reasons set forth below, the Court adopts Plaintiff's constructions of the terms "hanger frame," and with minor adjustments, "abuts." It adopts Defendants' construction of the terms "concavity," "cavity," and "channel."

### BACKGROUND

        The '300 Patent is directed to a clothing hanger having "a hanger supporting

means in the form of a cascade hook for supporting additional hangers therefrom." ('300 Patent at 1:52-54.) The hangers can be arranged in two formations. In the first formation, the hangers are "nested" by placing one hanger in front of another and inserting the back hanger's "cascade hook" through a hole in the body of the front hanger. In the second formation, one hanger dangles by its hook member from the other hanger's cascade hook member.

In their joint claim construction statement, the parties identify nine claim terms as in dispute. However, the parties have since narrowed the terms to be construed to "abuts," "hanger frame," "concavity," "cavity," and "channel."

## DISCUSSION

Claim construction is an issue of law to be determined by the court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 385 (1996). In interpreting the meaning of claim terms, "words of a claim are generally given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art at the time of invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations and internal quotation marks omitted). The court reads a claim term "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. at 1313.

When interpreting claim terms, courts must give priority to intrinsic evidence – i.e., the words of the claim themselves, the written description in the patent's specification, and the history of the patent application's prosecution before the U.S. Patent and Trademark Office (the "PTO"). Id. at 1314-17. The patent specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. . . . [I]t is the single

best guide to the meaning of a disputed term." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification's written description of the invention is relevant to construction of claims, as it is a "statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.'" Phillips, 416 F.3d at 1316 (quoting 35 U.S.C. § 112). Therefore, claim terms must be interpreted in a manner consistent with the specification of which they are a part. Phillips, 415 F.3d at 1316 (citation omitted).

However, preferred embodiments and written descriptions in the specification should not be used to limit the scope of claims. See Phillips, 416 F.3d at 1320 ("reading a limitation from the written description into the claims" is "one of the cardinal sins of patent law") (quoting SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001)). "[I]t is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention," and not to define the limits of a claim term. Id. at 1323.

The court may also use the prosecution history of a patent as an aid to the construction of claim terms. The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 416 F.3d at 1317 (citations omitted). However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.

Finally, courts may resort to "extrinsic" evidence such as dictionaries, treatises,

and expert testimony, which may serve as a source of "accepted meanings of terms used in various fields of science and technology" or provide "background on the technology at issue." Id. at 1317-18. However, such extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language," and must be considered in the context of the intrinsic evidence. Id. at 1317-19 (citations and quotation marks omitted). Accordingly, where analysis of the intrinsic evidence alone resolves the ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to construe the meaning of the term. Vitronics, 90 F.3d at 1583.

The Court's construction of the disputed claim terms is set forth below.

A.  "Abuts" and "Abuts Against"

The parties dispute the construction of the term "abuts" as used in Claims 1[1] and 13.[2] Plaintiff's proposed construction of the claim term "abuts" is "to lie or be adjacent to." Defendants' proposed construction of the claim term "abuts" is "lying adjacent to and in contact with." The parties are in agreement that the term "abuts against" (also in Claims 1 and 13) means "lying adjacent to and touching."

In support of its proposed construction, Defendant notes that the specification

---

[1] Claim 1 describes, in relevant part, "A pair of substantially identical nested first and second garment hangers, . . . wherein [the] cascade hook member of said first hanger extends through said hole of said second hanger and said front surface of said first hanger abuts against a rear surface of said second hanger, [and] the bottom surface of the cascade hook member of said first hanger abuts the top surface of the cascade hook member of said second hanger . . . ."

[2] Claim 13 describes, in relevant part, "[a] pair of substantially identical nested first and second garment hangers, . . . [wherein] the bottom surface of the cascade hook of the first hanger abuts the top surface of the cascade hook of said second hanger and said front surface of said first hanger abuts against said rear surface of said second hanger . . . ."

drawing shows the front surface of the second hanger and the inclined portion of the cascade hook touching the rear surface of the first hanger and its cascade hook. Defendants also point to several instances in the prosecution history where the examiner appears to have used "abut" and "abuts against" interchangeably, as well as to the specification itself, which utilizes the word "abuts" in reference to both the cascade hook and hanger body relationships. ('300 Patent at 4:6-9.) Defendants claim that this usage evidences an understanding by the examiner – and a tacit acknowledgment by Plaintiff – that "abuts" requires a touching. Neither argument is availing.

Defendants are correct that the specification drawings appear to show a touching; however, their reliance on the drawings runs afoul of the well established rule that "limitations from . . . the preferred embodiment, cannot be read into the claims absent a clear intention by the patentee to do so." MySpace v. GraphOn Corp., 672 F.3d 1250 (Fed. Cir. 2012). Here, the Plaintiff never expressed a clear intention to be limited by the drawing.

The Court must give claim terms "their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question." Phillips, 415 F.3d at 1312-13. Neither the claim nor the specification explicitly defines "abuts." Although the use of the word "abuts" in certain portions of the patent history and in the specification may be read to suggest that touching is required both between cascading members and between the front and back of the hanger bodies when nested, the suggestion is not a compelling one, since the ordinary use of the word "abuts" encompasses both touching and proximity. See, e.g., Random House Webster's College Dictionary (2d ed. 2005) (defining "abuts" as: "1. To be adjacent, touch or join at the edge or border . . . ; 2. To be adjacent to, border on, end at"). Indeed, the consistent use of "abuts" and "abuts against" in the claim itself, in describing the relationships between different elements of the hanger, suggests more strongly that a different level of required proximity was

intended in connection with the cascade hooks, on the one hand, and the hanger bodies, on the other. To refuse to give meaning to the modifier "against" – when the word "abuts" does not ordinarily necessitate physical contact, would be to render the word "against" superfluous. See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("While not an absolute rule, all claim terms are presumed to have meaning in a claim.") This the Court declines to do. The Court's conclusion – that the patent claims proximity, rather than complete touching, of the cascading members – also finds support in the testimony of William Herrmann, who testified credibly that, were the hanger manufactured though typical plastic molding techniques, a tolerance that guaranteed touching of the cascading members in every instance would be inordinately difficult to achieve at a reasonable price. (Hrg. Tr. at 38-40) Thus, a person skilled in the art would not understand the word "abuts" to require touching of the cascade hook members.

Accordingly, the Court adopts Plaintiff's construction, with clarifying additional punctuation, to wit: "Abut" means "to lie, or be, adjacent to."

B.  "Hanger Frame"

The parties dispute the construction of the term "hanger frame" as used in Claim 1. Plaintiff's proposed construction of the claim term "hanger frame" is "the overall hanger structure comprising, in certain embodiments, the body and arms." Defendants' proposed construction of the claim is "the hanger body, the hanger arms and the hanger crossbar, where the hanger crossbar is the horizontal bar extending between the opposing outer ends of the hanger arms."

Defendants' argument that the hanger frame requires a horizontal bar rests on

language in Claims 1 and 13 that requires that "the top and bottom portion of each of said first and second hangers [be] nested and affixed in a common horizontal plane relative to one another," and the specification illustration, which includes a crossbar. However, Defendants' contention that the hangers cannot be "affixed in a common horizontal plane" without the presence of a horizontal bar defies simple geometry. Defendants have not identified any other intrinsic or extrinsic evidence requiring a horizontal bar. The Court will not infer a crossbar limitation from the illustration of a preferred embodiment. Accordingly, the Court adopts Plaintiff's construction of "hanger frame."

C.     "Concavity"[3]

The claims at issue describe a "concavity formed in [the] rear surface of [the] cascade hook member." (See, e.g., '300 Patent, Claim 4.) Plaintiff's proposed construction of "concavity" is "a concave (curved) portion of the cascade hook member." Defendants' proposed construction is:

> A horizontally positioned semi-circular notch or recess extending across the rear surface of the cascade hook member at the intersection of a vertical portion and inclined portion of the cascade hook, where the notch has a depth sufficient to hold the hook member of another hanger within the recess.

The claims' description of a concavity formed "in the rear surface" of the hook is the most persuasive evidence that the claim contemplates an indentation or a hollowing-out of the surface, not merely the curvature of the cascade hook itself. Additionally, Defendants point to the specification, which provides the following description of the concavity's function:

> Concavity 73 may be dimensioned so as to hold a hook member of another hanger therein, while channel 71 may be of smaller dimensions, prohibiting a hook member

---

[3]     The claim term "concavity" appears in Claims 4, 7, 8, 10, 12, 16, 19, 20, 22 and 23.

> present in cavity 72 from moving through channel 71, thereby maintaining the hook member in cavity 72.

('300 Patent 4:17-21.) Defendants argue persuasively that Plaintiff's construction is inconsistent with the specification because a simple curvature could not "hold" the hook member. Defendants also point to the drawings in the specification, which show an indentation in the surface of the cascade hook members. ('300 Patent, Fig. 4.) On the basis of this intrinsic evidence, the Court adopts Defendants' construction of "concavity."

D. <u>"Cavity"</u>

>  Claim 10 describes the following:
>
> The pair of first and second garment hangers of claim 9, wherein said front surface of said cascade hook member, upon being inserted through said hole of said second garment hanger, forms a cavity between a portion of said front surface of said cascade hook member and a concavity formed in said rear surface of said cascade hook member of said second hanger.

Plaintiff's proposed construction of the claim term "cavity" is:

> A space between a portion of the front surface of one cascade hook member and the rear portion of a second cascade hook member. The space may be located at the concavity of the second cascade hook member.

Defendants' proposed construction of the claim term "cavity" is:

> The hollowed-out space defined by the concavity of a first garment hanger and the front surface of the cascade hook member of a second garment hanger when the first and second garment hangers are nested.

The key differences between the parties' constructions are (1) the shape of the space – <u>i.e.</u>, whether the patent claims any space or whether it must be a "hollowed-out space," and (2) the location of the space. As explained above, the Court has adopted Defendants' construction of "concavity," which requires a recess in the surface of the back of the cascade hook. The claim

language also specifically identifies the location of the cavity: between the concavity in the rear surface of the outside cascade hook and the front surface of the nested cascade hook. The Defendants' construction is most consistent with the claim language. It is also most consistent with the dictionary definition of "cavity," which is "a hollowed-out space." Merriam–Webster's Collegiate Dictionary 197 (11th ed. 2007).

Accordingly, the Court adopts Defendants' construction of the term "cavity."

E.   "Channel"

Plaintiff's proposed construction of the claim term "channel" is:

A space between a portion of the front surface of the cascade hook member of a first hanger and a portion of the rear surface of the cascade hook member of a second hanger.

Defendants' proposed construction of that term is:

When hangers having cascade hooks with concavities are nested, the space above the concavity in the cascade hook of a first hanger and between the front surface of the vertical portion of the cascade hook of the first hanger and the rear surface of the vertical portion of the cascade hook of the second hanger.

The only material difference between the constructions is where the "channel" is located – i.e., whether it must be above the concavity. At the hearing, Plaintiff stipulated that the channel lies above the concavity. (Hrg. Trans. at 125-26.) Accordingly, the Court adopts Defendants' construction of the term "channel."

CONCLUSION

For the foregoing reasons, the Court hereby adopts the following constructions with respect to the five disputed claim terms:

"Abuts" means to "lie, or be, adjacent to."

"Hanger frame" means "the overall hanger structure comprising, in certain embodiments,

the body and arms."

"Concavity" means "a horizontally positioned semi-circular notch or recess extending across the rear surface of the cascade hook member at the intersection of a vertical portion and inclined portion of the cascade hook, where the notch has a depth sufficient to hold the hook member of another hanger within the recess."

"Cavity" means "the hollowed-out space defined by the concavity of a first garment hanger and the front surface of the cascade hook member of a second garment hanger when the first and second garment hangers are nested."

"Channel" means "when hangers having cascade hooks with concavities are nested, the space above the concavity in the cascade hook of a first hanger and between the front surface of the vertical portion of the cascade hook of the first hanger and the rear surface of the vertical portion of the cascade hook of the second hanger."

This matter remains referred to Judge Dolinger for general pretrial management. This Order terminates docket entry no. 15.

Any dispositive motions must be filed by **March 8, 2013**. The final pre-trial conference will be held on **May 31, 2013, at 11:00am**. All other aspects of the Pre-Trial Scheduling Order (docket entry no. 24) remain in place.

SO ORDERED.

Dated: New York, New York
January 3, 2013

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge