**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
WORLDWIDE HOME PRODUCTS, INC.,

                    Plaintiff and
                    Counterclaim-Defendant

    v.

TIME INC., BED BATH & BEYOND INC.,
COHESION PRODUCTS INC., and SHERRY
HANSON,

                    Defendants and
                    Counterclaimants.
------------------------------------------------------------x

NO. 1:11-cv-3633-LTS (MHD)

**ECF Case**

DEFENDANTS' REPLY TO
PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
PRECLUDE THE TESTIMONY OF
KLAUS SYDOW AND TO DISMISS

**Oral Argument Requested**

## I.      INTRODUCTION

Plaintiff Worldwide Home Products, Inc.'s opposition misses the mark: the issue presented by Defendants' motion is not whether the testimony of Plaintiff's expert, Klaus Sydow, is "relevant;" the issue is whether his testimony is based on reliable principles and methods.  It is not.

Instead, Mr. Sydow throws out calculations based on various unknown theories, yet he never qualifies one as being a principle or method commonly used or even recognized in the industry.  In fact, Mr. Sydow repeatedly admits, among other things: "I have no industry specific information or samples of previous licenses for similar products," "it is a negotiation for a license between competitors of a type that I have not seen in," and "it is my first time coming across this."  However, he is amazingly confident that his analysis is correct based upon his five years of licensing experience; yet it is apparent from Mr. Sydow's résumé and report that he has

never negotiated a patent license, let alone a license for products similar to those at issue in this case.  Further, Mr. Sydow bases his entire royalty analysis on the sale of flocked cascade hangers, with not a single reference to the patentable improvements asserted by Plaintiff over other well-known cascade hangers current sold in the market.

In light of Mr. Sydow's frail testimony, it is no surprise that Plaintiff would quickly dismiss the *Georgia-Pacific* factors.  Plaintiff wishes to avoid these factors because Plaintiff has no explanation or evidence to support the guess work provided in Mr. Sydow's report.  Indeed, Plaintiff's opposition makes it more clear that the Court should preclude Mr. Sydow's expert testimony in its entirety.

## II.   PLAINTIFF'S INTERPRETATION OF THE ENTIRE MARKET VALUE RULE IS ERRONEOUS

The law on the entire market value rule is clear: "the entire market value rule [only] permits recovery of damages based on the value of a patentee's entire apparatus containing several features when the patent-related feature is the 'basis for customer demand.'" *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1549 (Fed. Cir. 1995) (en banc) (citing *State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed. Cir. 1989); *see also Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) ("For the entire market value rule to apply, the patentee must prove that "the patent-related feature is the 'basis for customer demand.'")  However, Plaintiff, without providing a single case that supports its claim, now tells this Court that the prohibition on awarding royalties based on the entire market value of a product is limited to the fact situation where there is a patented component of a multi-component product.  That fact situation is only one instance where the entire market value product prohibition obtains.  **The general rule has no such limitation**.

In their Memorandum in Support of the Motion to Preclude Testimony, Defendants cite to the recent Federal Circuit case of *Laser Dynamics Inc. v. Quanta Computer Inc*., 694 F. 3d 51, (2012) (p.66-67).  The cited portions of that decision reference the 1884 United States Supreme Court case of *Garretson v. Clark*, 111 U.S. 120, 121 (1884).  In its opposition, Plaintiff tellingly ignores that decision altogether.  That decision is directly on point with the case at bar.

In *Garretson*, which is still good law today, the Supreme Court made it clear that in situations involving an improvement to a well-known and existing product, a plaintiff is only entitled to be compensated to the extent that the improvement was responsible for sales of the product.  That is exactly the situation we have in the case at bar.  Plaintiff did not invent cascade hook hangers.  (Apparently Plaintiff's expert was of the opinion that Plaintiff did in fact invent cascade hook hangers, because his entire opinion is based upon the economic value of such hangers). Plaintiff's only contribution, as set forth in the claims of the patent in suit, are certain specific improvements on the structure of the cascade hooks themselves, to wit, the abutment; concavity; and channel features.

In *Garretson*, there was no separately patented component of a multi-component product. In its decision, the Supreme Court stated the following:

> **The patent was for an improvement in the construction of mop-heads**, which may be described, with sufficient accuracy, as an improvement in the method of moving and securing in place the movable jam or clamp of a mop-head. **With the exception of this mode of clamping, mop-heads like the plaintiff's had been in use time out of mind**. Before the master, the plaintiff proved the cost of his mop-heads, and the price at which they were sold, and claimed the right to recover the difference as his damages. This rule was rejected; and, no other evidence of damages being offered, the master reported as stated. **When a patent is for an improvement, and not for an entirely new machine or contrivance, the patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance. He must separate its results distinctly from those of the other parts, so that the benefits derived from it may be distinctly seen and appreciated**. The rule on this head is aptly stated by

-3-

Mr. Justice BLATCHFORD in the court below: **'The patentee,' he says, 'must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features**, and such evidence must be reliable and tangible, and not conjectural or speculative; **or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' The plaintiff complied with neither part of this rule. He produced no evidence to apportion the profits or damages between the improvement constituting the patented feature and the other features of the mop. His evidence went only to show the cost of the whole mop, and the price at which it was sold. And, of course, it could not be pretended that the entire value of the mop-head was attributable to the feature patented. So the whole case ended, the rule was not followed, and the decree is therefore affirmed.**

*Garretson*, 111 U.S. at 121 (emphasis added).

Applying that decision to the case at bar, one could easily have written that decision to include "the patent was for an improvement in the structure of cascade hooks in cascade hook hangers, which may be described, with sufficient accuracy, as an improvement in the cascade hangers consisting of an abutment feature; a concavity feature; and a channel feature. With the exception of these improvements, cascade hangers, like the Plaintiff's, had been in use time out of mind...."

Not only did Plaintiff ignore *Garretson*, it also ignored Judge Posner's analysis in his *Daubert* decision in *Apple v. Motorola*, 1:11-CV-08540, 2012 WL 1959560 (N.D. Ill. May 22, 2012). That case did not involve separately patented components of a multiple component product. Judge Posner's decision was an analysis of certain very specific claim limitations found in the various claims. For example, on page 15-16 of his opinion, Judge Posner states:

…**The part of the patent claim** on which Napper's proposed testimony is mainly based is a heuristic (an instruction to the cell phone) that "tells" the cell phone to treat an upward or downward motion of the finger as a vertical swipe even if it is not perfectly vertical;…

… He was asked to provide an estimate of Apple's damages from the alleged infringement of its '949 patent, and one of the components of those damages was damages for infringing the finger-tap page-turning **element of the patent**.

*Apple*, 2012 WL 1959560 at *8-9.

Those excerpts from his opinion are not exhaustive, but are merely illustrative.  A reading of the entire opinion shows that it is based entirely on various claim elements in the patent claims.  There is no discussion, whatsoever, of a patented component of a multiple component product.  Judge Posner followed the law as set forth in *Garretson*. The prohibition on awarding royalties or damages based on the entire market value of a product when all the patentee has done is made some minor improvements, is well-known and basic law.  Plaintiff's attempts to rewrite the law to limit the doctrine to multi-component products, wherein one of the components is patented, is beyond frivolous.  There is absolutely no support, in the law, for Plaintiff's proposition.

## III.   THE DEFENDANTS ARE NOT ASSERTING THAT AN EXPERT IS LIMITED TO UTILIZING THE *GEORGIA-PACIFIC* FACTORS

To afford courts the opportunity to consider credible evidence, Rule 702 requires that expert testimony be based on reliable principles and methods that are applied by the witness reliably to the facts of the case.   *See* FED. R. EVID. 702.  Thus, the importance of the *Georgia-Pacific* factors is that they are court-approved factors, which an expert can consider in rendering his or her opinion.  If an expert is going to rely on factors other than the *Georgia-Pacific* factors, then that expert has an obligation to establish that his or her methodology is valid.  In this case Plaintiff's expert's entire basis for his opinion is that Defendants switched from selling non-cascade flocked hangers to cascade flocked hangers. There was no discussion in Plaintiff's expert's opinion as to the impact, if any, of the patented improvement features asserted by Plaintiff.  There is nothing in Plaintiff's expert's opinion to establish that his methodology is one

which should be accepted by this Court.  In fact, because he completely ignored the patented features, his opinion is of no relevance.

It is also of interest that Plaintiff asserts that its expert actually did in fact address the *Georgia-Pacific* factors.  Out of the 15 *Georgia-Pacific* factors, Plaintiff could only pull four out of its hat.  However, as illustrated below, the purported expert's analysis of the *Georgia-Pacific* factors reveals that time-after-time he admits that he is unable to apply those factors.

Purported Factor 3:    "At this point I do not know what the appetite for an exclusive deal would have been."  *See* Pl.'s Opposition at 10 (ECF Doc. No. 169); Expert Report of Klaus Sydow ("Syndow Report") at 4.

Purported Factor 5:    "The Cohesion analysis is difficult because it is a negotiation for a license between competitors of a type that I have not seen in. I am sure that at some point it has been done but it is my first time coming across this."  *See* Pl.'s Opposition at 10; Sydow Report at 6.

Purported Factor 8:    Without providing a recognized basis, Mr. Sydow opines: "One approach for determining a royalty between competitors that I believe would be reasonable would be to have the parties split the proceeds of the wholesale sales."  *See* Pl.'s Opposition at 11; Sydow Report at 7.

Purported Factor 11:   Without either knowledge or recognition of the fact that Bed Bath & Beyond currently sells and has in the past sold the prior art Merrick Attachable (cascading) hangers, Mr. Sydow blindly opines: "In this case, Bed Bath & Beyond clearly valued highly the cascade hook feature of the patent. I reach this conclusion based on the evidence that Bed Bath & Beyond completely replaced its previous, non-cascade hook flock hanger program with the cascade hook flock hanger program, and further that it created an extensive line extension having the cascade hook."  *See* Pl.'s Opposition at 11; Sydow report at 4.

**IV.    PLAINTIFF'S ARGUMENTS ABOUT WHETHER OR NOT THIS CASE SHOULD BE DISMISSED, BASED UPON THE FAILURE OF ITS EXPERT, IS NO LONGER RELEVANT**

Because Defendants do not wish to conflate the issue, Defendants are withdrawing the portion of their motion requesting dismissal of Plaintiff's case.  Instead, Defendants plan to file a separate motion for summary judgment on the issue of Plaintiff's failure to present the proper royalty analysis.  Therefore the question of whether or not this case should be dismissed will be decided in the context of that motion.

**V.    CONCLUSION**

Plaintiff's expert has based his entire royalty analysis on the sale of flocked cascade hangers, with not a single reference to the asserted patentable improvements over well-known cascade hangers.  It is undisputed that cascade hangers are well known prior art and that Plaintiff does not have a patent which covers cascade hangers.  The most that Plaintiff can assert is that it has a patent on certain improvements to the cascade hooks of the cascade hangers, to wit: abutment, concavity, and channel.  The law is very clear.  In order to obtain royalties on an improvement, one must demonstrate the market value of those improvements.  One is not entitled to obtain royalties on the entire market value of a product unless it can establish that the entire value of the product is attributable to the patented feature.  This has been the law since at least 1884, when the U.S. Supreme Court decided *Garretson v. Clark*.  In 2012, the Federal Circuit affirmed these principles in *Laser Dynamics Inc. v. Quanta Computer Inc*.

Respectfully Submitted,

Dated:  March 1, 2013

s/ Edward F. O'Connor
Edward F. O'Connor (admitted *pro hac vice*)
Uleses C. Henderson, Jr. (admitted *pro hac vice*)
**THE ECLIPSE GROUP, LLP**
1920 Main St., Suite 150
Irvine, California 92614
Telephone: 949.851.5000
Facsimile: 949.851.5051
efo@eclipsegrp.com
uch@eclipsegrp.com

Attorneys for Defendants & Counterclaimants
BED BATH & BEYOND INC. and
COHESION PRODUCTS, INC.