UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WORLDWIDE HOME PRODUCTS, INC.,

       Plaintiff and
       Counterclaim-Defendant,

  -v-                                               No.  11 Civ. 3633 (LTS)(MHD)

TIME INC. et al.,

       Defendant and
       Counterclaim-Plaintiffs.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff, Worldwide Home Products, Inc. ("Plaintiff"), brings this suit against Defendants Bed, Bath and Beyond, Inc., and Cohesion Products Inc. ("Defendants"), for patent infringement, claiming that the "Real Simple Slimline Hanger" (the "Slimline Hanger") infringes upon U.S. Patent No. 7,938,300 (the "'300 Patent").  Defendants move pursuant to Federal Rule of Civil Procedure 56 for summary judgment, asserting that the '300 Patent is invalid because its allowance was procured through inequitable conduct.  Plaintiff moves for summary judgment dismissing Defendants' inequitable conduct defense, asserting that Defendants' evidence is insufficient to establish invalidity based on inequitable conduct. Plaintiffs also move to strike the Report of William Poms (the "Poms Report"), which Defendants have proffered in support of their summary judgment motion, and for preclusion of any testimony by Mr. Poms.

       The Court has considered thoroughly all of the parties' submissions in connection with the motions.  For the following reasons, the Court denies Plaintiff's motion to strike the

Poms Report and preclude Mr. Poms' testimony, denies Plaintiff's summary judgment motion, grants Defendants' motion for summary judgment declaring the '300 Patent invalid as the product of inequitable conduct and, accordingly, dismisses Plaintiff's infringement claims and directs entry of judgment in Defendants' favor.

BACKGROUND[1]

The '300 Patent is directed to a clothing hanger having "supporting means in the form of a cascade hook for supporting additional hangers therefrom." ('300 Patent at 1:52-54.) Multiple units of the hanger can be arranged in two configurations. In the first configuration, the hangers are "nested" by placing one hanger in front of another and inserting the back hanger's "cascade hook" through a hole in the body of the front hanger. In the second configuration, one hanger dangles by its hook member from the other hanger's cascade hook member.

Defendants allege that Plaintiff engaged in inequitable conduct to procure the '300 Patent in that, during the prosecution of the patent, Plaintiff's counsel, Jeffrey Sonnabend, Esq., knowingly provided false information to the United States Patent and Trademark Office (the "PTO") examiner concerning hangers that constituted prior art.

Mr. Sonnabend prosecuted the U.S. Application Serial No. 12/182,351 (the "Application"), which resulted in the issuance of the '300 Patent, beginning in July 2008. On February 4, 2010, Plaintiff sent defendant, Bed Bath and Beyond, a cease and desist letter asserting that the Slimline Hangers "will be deemed an infringing product" because Plaintiff "fully expect[ed] the patent to issue in the coming months." (Docket entry no. 142 (the "O'Connor Decl."), Exs. E and A-1-12.) On April 27, 2010, Mr. Sonnabend filed with the PTO an information disclosure statement (the "IDS") related to the Application. (Id. Ex. 2A.) In the

---

[1] The following material facts are undisputed unless otherwise noted.

IDS, Sonnabend disclosed a website image of a printed product brochure offering for sale certain Merrick hangers, product number C90601-A (the "Merrick Reference"), showing hangers that had apparent similarities to the hanger that was the subject of the Application; however, the brochure was undated. (Id. Exs. A-2, A-3, and A-4.) Specifically, Plaintiff's IDS identified the Merrick Reference as a Non-Patent Literature Document, describing it as a "Product Brochure for MERRICK Hanger products (date unknown)." The Merrick Reference included low-resolution "thumbnail" images of six hangers that are nested together and labeled with product identification number C90601-A (the "Merrick Hangers").

On October 5, 2010, the PTO examiner rejected certain claims in the Application, citing the Merrick Reference, which the examiner had dated to August 10, 2006, by using an internet archive service. (Id. Exs. A-6 and A-7.) In the notice of rejection, the examiner noted that the Merrick Reference teaches a group of six identical hangers that are nested together. (Id. Ex. A-5 at 5.) Specifically, regarding the Application's claims that the '300 Patent hangers abut one another for "easy storage and transportation of hangers while also providing grouping of hangers for purchase," the PTO examiner noted that " MERRICK teaches such structure as shown in the blow up view of either C90601-A12 or C90601-A; however, regardless, the claim language of claims 5 and 10 - 13 is still in functional form wherein [a third-party patent] in view of MERRICK is completely capable of such function." (Id. Ex. A-5 at 5-6.)

On October 12, 2010, Mr. Sonnabend discussed Application Claims 1, 2, 14, and 15 and the Merrick Reference in a telephone interview with the PTO examiner. (Id. Ex. A-9 at 2.) Following the interview, Mr. Sonnabend filed, with the PTO examiner, a document captioned "Amendment After Final," dated the same date as the interview (the "Amended Application"), that amended the Application's Claims 1 and 14, among others. (Id. Ex. A-10 at

2, 6.)  Mr. Sonnabend asserted in the Amended Application that:

> Claim 1 and 14 have been amended to claim a cascade hook member having a top surface and a bottom surface, said cascade hook member extending from said front surface and the bottom surface of the cascade hook member of said first hanger <u>abutting the top surface of the cascade hook member of said second hanger</u>.  <u>This distinguishes the claims from Arnold in view of Merrick</u>.

(<u>Id.</u> Ex. A-10 at 8 (emphasis supplied).)  Fewer than two years later, on August 10, 2012, Mr. Sonnabend testified at his deposition taken in this litigation that he did not remember anything that was said during the October 12, 2010, telephone interview with the PTO examiner.  (<u>Id.</u> Ex. B at 22.)  However, Mr. Sonnabend admitted that he was in possession of physical versions of Merrick Hangers depicted in the Merrick Reference prior to the October 12, 2010, interview with the PTO examiner.  (<u>Id.</u> Ex. B at 43.)[2]  Mr. Sonnabend never disclosed any further information about the Merrick Hangers to the PTO examiner.  (<u>Id.</u> Ex. B at 45-46.)

        Mr. Sonnabend testified that, although he provided the Merrick Reference to the PTO examiner "out of an abundance of caution," he did not provide the examiner with the physical version of the hangers.  (<u>Id.</u>)  At the deposition Mr. Sonnabend refused, on the basis of attorney-client privilege, to explain this failure to provide the Merrick Hangers to the PTO examiner.  (<u>Id.</u> Ex. B at 45-46.)  It was only later, in a December 21, 2012, affidavit proffered in support of his summary judgment motion, that Mr. Sonnabend asserted that he believes that the Merrick Hangers were a reference separate from Merrick Reference consisting of the website version of the hanger brochure, that he had been unable to determine whether the Merrick Hangers, which are labeled with the same product numbers listed on the Merrick Reference

---

[1]     At the deposition, Mr. Sonnabend was asked: "[d]o you know whether you had in your possession actual Merrick hangers at the time you had this conversation with the examiner?"  He responded:  "I believe that I did . . . . I'm willing to state on the record that I had it prior to that [interview with the PTO examiner]."  (<u>Id.</u>)

website, were indeed prior art, and had determined for that reason that he had no obligation to disclose the Merrick Hangers (or images of those physical hangers) to the examiner. (Sonnabend Decl. ¶¶ 5-7.)

There was a "sense of urgency" within the Plaintiff company in March 2011 about obtaining approval of the Application because Plaintiff was in the process of supplying a customer with a product that was to be protected by the '300 Patent. (O'Connor Decl. Ex. F.) Plaintiff's representative testified that the customer had asked Plaintiff "if there was an actual patent" only a week or two before it issued. (Id.) On March 21, 2011, after he had filed the Amended Application, Sonnabend filed a petition to expedite examination of the Application, apparently to facilitate legal action upon Plaintiff's claim that the Slimline Hanger infringed the patent that the Plaintiff was seeking through the Application. On March 23, 2011, the PTO issued a Notice of Allowability stating in pertinent part that:

> Independent Claims 1 and 14 are allowable because the prior art fails to disclose two identical hangers, each having a cascade hook member and corresponding hole, nested together wherein when nested together a top surface of the cascade hook member of the second hanger is in contact with a bottom surface of the cascade hook member of the first hanger, a front surface of the first hanger and the rear surface of the second hanger are abutting against each other, and top and bottom portions of each hanger are in a common horizontal plane relative to one another. Note that when the corresponding front and rear surfaces of the attachable hangers (product number C90601) of MERRICK (NPL document) are abutting one another, top and bottom surfaces of the cascade hook member are NOT abutting one another . . . .

(Id. Ex. A-12 at 2.)

On April 27, 2011, prior to the allowance of the '300 Patent, Defendants' counsel sent Mr. Sonnabend a letter asserting that, contrary to the description of the Merrick Hangers in the Notice of Allowability, the cascading hook member of the Merrick Hangers do "abut and engage the bottom surface of the other adjoining cascading hook member," (the "April 27

Letter"). Defendants' counsel noted that the "representation of record about the Merrick hanger is inaccurate" and asserted that "applicant has an affirmative duty of candor and good faith in dealing with the Patent Office . . . [, and] applicant should withdraw the [Application] from issuance and disclose the misrepresentations . . . " The April 27 Letter attached certain high-resolution photographs of the Merrick Hangers that show abutting cascading hook members, and the photographs clearly show the Merrick Hangers with the product number C90601-A on the packaging.  (Id. Ex. D.)  Plaintiff did not, however, withdraw the Application or correct the misapprehension of the PTO regarding the features of the Merrick Hangers.  It is undisputed that the Merrick Hangers do actually feature abutting cascade hook members.

When questioned during his deposition as to why he did not submit the high-resolution photographs to the PTO examiner, Mr. Sonnabend explained that he believed he had no obligation to do so because the April 27 Letter did not specifically identify the photographs as prior art.  (Id. Ex. B at 5-7.)  Mr. Doherty testified that the only investigation the Plaintiff conducted into whether the Merrick Hangers were prior art was a call to the customer service line of Merrick; he did not disclose what, if any, information Plaintiff received during that call. (Id. Ex A-1)  The '300 Patent issued on May 10, 2011, without further comment from Mr. Sonnabend to the PTO examiner.  (Id. Ex. A-1.)  During the pendency of this litigation, a Merrick representative confirmed that product number C90601-A shown in the Merrick Reference was indeed the same product as the Merrick Hangers depicted in the photographs and it had not changed aside from the number of hangers packaged together.  (Id. Ex. G at 16.)

Defendants have offered the Report of Mr. William Poms, Esq., a former PTO examiner, as evidence regarding the adequacy of the disclosures and the materiality of the various references available during the prosecution of the '300 Patent.  Mr. Poms opines, inter

alia, that Mr. Sonnabend's conduct was deceptive with regard to his disclosures to the PTO. In his report, Mr. Poms offers the following evaluation of the evidence concerning Mr. Sonnabend's October 5, 2010, telephone interview with the PTO examiner:

> Aside from being persuaded by plaintiff's attorney, Mr. Sonnabend, during the Telephone interview, the only reason for the Examiner to change his position from his final rejection was based on what was disclosed or shown or not shown in the [Merrick Reference]. These thumbnail images of the Merrick hangers were not high resolution pictures and it was difficult from those pictures to determine whether cascade hook members of the Merrick hangers were or were not in contact with each other when the hangers were placed next to each other in their packaging, or nested configuration, but there was a strong inference that they were.

(Poms Report at 14-15.) Mr. Poms opines that, at the time of the interview, "Sonnabend knew that Patent Examiner had reached an erroneous and completely wrong understanding of the structure of the thumbnail images of the Merrick hangers shown on the Merrick webpages" because Mr. Sonnabend was in possession of the actual Merrick Hangers which had cascade hook members that abutted while in nested formation. (Id.) Mr. Poms concluded with respect to the interview, based on his extensive experience as a PTO examiner and patent prosecutor, that "the only way the examiner could have reached the conclusion that the hooks shown in the image were not in contact with each other was if the plaintiff's attorney told him, during their oral conversation, that the hooks were not touching." (Id. at 17.)

Mr. Poms further opines, based on his review of the prosecution history of the '300 Patent, that the '300 Patent "would not have issued as a patent if plaintiff and particularly its lawyer, Mr. Sonnabend, had provided the Patent Examiner, prior to May 10, 2011 . . . with the physical Merrick Hangers and the detailed pictures of the Merrick Hangers that were in their possession." (Id. at 20.) Mr. Poms also asserts that, "Plaintiff, and particularly, its lawyer, Mr. Sonnabend, deliberately and willfully and in violation of the law and the Patent Office rules,

withheld more detailed and pertinent prior art than the Patent Examiner had in his possession when he issued the '300 patent on May 10, 2011," despite Plaintiff's and Mr. Sonnabend's duties of "disclosure to the Patent Examiner."  (Id.)

Plaintiff contends that, since it and Mr. Sonnabend were unaware that either the Merrick Hangers or the photographs of the Merrick Hangers contained in the April 27 Letter were prior art, they were under no duty to disclose these materials to the PTO examiner nor to correct the statement of the PTO examiner in the Notice of Allowability.  Mr. Sonnabend asserts that, because he believed the Merrick Reference and the photographs contained in the April 27 Letter were references separate and apart from the Merrick Reference, he believed he was under no duty to disclose this information to the examiner.  (Sonnabend Decl. ¶¶ 5-7.)  Plaintiff does not offer any evidence as to what information Mr. Sonnabend conveyed to the PTO examiner during the October 5, 2010, telephone interview.

DISCUSSION

Motion in Limine to Preclude Testimony of William Poms

Because the outcome of the motion to preclude might affect Defendants' ability to prevail on their summary judgment motion, it is appropriate to consider the motion to preclude prior to the parties' cross-motions for summary judgment.  Briese Lichttechnik Vertriebs GmbH v. Langton, 09 CIV. 9790 (LTS) (MHD), 2012 WL 3105083, at *2 (S.D.N.Y. July 31, 2012).  Plaintiff moves to strike Mr. Poms' Report and preclude his testimony, arguing that it is not properly admissible under Federal Rule of Evidence 702 in that it inaccurately informs the Court of the law and usurps the court's and jury's roles in determining the law and facts of this case.

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Additionally, "[a]n opinion is not objectionable just because it embraces an ultimate issue" of the case. Fed. R. Evid. 704.

In patent cases, judges often rely on experts to determine the "disclosures of a patent, the operation of allegedly infringing devices, and the teachings of prior art." N. V. Maatschappij Voor Industriele Waarden v. A. O. Smith Corp., 590 F.2d 415, 419 (2d Cir. 1978). "As in other fields where expert testimony is of vital significance, the opinions of patent experts must often be formulated in conclusory terms that make reference to legal concepts or touch on central issues in the case." Id. Experts may also testify on mixed questions of law and fact. In re Initial Pub. Offering Sec. Litig., 174 F. Supp. 2d 61, 65 (S.D.N.Y. 2001) (citing In re Air Disaster at Lockerbie, Scotland, 37 F.3d 804, 826-27 (2d Cir. 1994)).

Mr. Poms' testimony with regard to the propriety of the Plaintiff's conduct before the patent office and the materiality of the omitted information to the PTO examiner's decision is properly admissible. Mr. Poms is qualified as an expert in the patent prosecution process, having served as both a PTO examiner and a prosecuting attorney. He has based his opinions on the factual record before the Court, and has reliably applied his knowledge of the facts and the law. His opinions are relevant to the adequacy of Plaintiff's disclosures to the PTO examiner, which is a question of mixed law and fact.

Furthermore, Mr. Poms has cited, accurately, relevant principles of law. For

example, Mr. Poms recites the controlling Therasense[3] standard for the doctrine of inequitable conduct and notes that he is basing his opinion on that standard and the relevant facts.  (Poms Report at 12-13.)  Mr. Poms also cites the well-known principle, reiterated in Rohm & Haas Company v. Crystal Chemical Company, that intent "may be proven by a showing of acts the natural consequences of which are presumably intended by the actor."  722 F.2d 1556, 1571 (Fed. Cir. 1983) (quoting Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144 at 1151 (Fed. Cir.1983)) (internal quotation marks omitted).  Plaintiff's assertion that Therasense abrogated Rohm on this rule of law is unsupported.

Plaintiff's motion to strike the Poms Report and preclude Mr. Poms' testimony is denied.

The Parties' Cross-motions for Summary Judgment

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact).  A fact is considered material if "it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson, 477 U.S. at 248).  The Second Circuit has explained, however, that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on

---

[3]     Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011).

conclusory allegations or unsubstantiated speculation." DeFabio v. East Hampton Union Free School Dist., 623 F.3d 71, 81 (2d Cir. 2010).  Rather, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. Duch v. Jakubek, 588 F.3d 757, 764 n.2 (2d Cir. 2009); see also Fed. R. Civ. P. 56(e).  When deciding cross-motions for summary judgment, the standard to be used "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." Schultz v. Stoner, 308 F.Supp. 2d 289, 298 (S.D.N.Y.2004) (internal citations and quotation marks omitted).

    Inequitable Conduct

    "[I]nequitable conduct regarding any single claim render[s] the entire patent unenforceable." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1288 (Fed. Cir. 2011).  In Therasense, the Federal Circuit clarified and heightened the standard for invalidation of patents based on inequitable conduct on the part of a prosecuting attorney.  It held that a defendant must prove by "clear and convincing evidence" that the applicant "knew of the reference, knew it was material, and made a deliberate decision to withhold it." Therasense, Inc. v. Becton, Dickinson & Co., 649 F. 3d 1276, 1290 (Fed. Cir. 2011) (en banc).  "[I]ntent and materiality are separate requirements." Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1334 (Fed. Cir. 2012) (quoting Therasense, 649 F. 3d at 1290) (quotation marks omitted).  "[A] district court may not infer intent solely from materiality.  Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality." Id. at 1290.  "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." Id. (citation omitted).  "However, to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference

able to be drawn from the evidence.'" Id. (citation omitted). The burden of coming forward with clear and convincing evidence of deceitful intent is on the party alleging inequitable conduct: "the 'patentee need not offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level of intent to deceive by clear and convincing evidence.'" Id. at 1291 (citation omitted). Here, Plaintiff asserts that it is entitled to summary judgment on the issue of inequitable conduct because Defendant has failed to come forward with the requisite clear and convincing evidence and, furthermore, alleges that Plaintiff's decision not to disclose information concerning the physical hangers was made in good faith.

    Patent prosecution is an ex parte process and, consequently, "[p]ublic interest demands that all facts relevant to such matters be submitted formally or informally to the Patent Office, which can then pass upon the sufficiency of the evidence. Only in this way can that agency act to safeguard the public in the first instance against fraudulent patent monopolies." Gen. Elec. Co. v. Mitsubishi Heavy Indus. Ltd., 10 Civ. 276-F, 2013 WL 2338345 (N.D. Tex. May 28, 2013) (quoting Precision Instrument Mfg. Co. v. Auto. Maintenance Mack Co., 324 U.S. 806 (1945)). The Supreme Court has adopted the reasoning of the PTO that "the nature of an application for patent, [and] the relationship of attorneys to the Patent Office requires the highest degree of candor and good faith. In its relation to applicants, the [PTO examiner] must rely upon their integrity and deal with them in a spirit of trust and confidence." Kingsland v. Dorsey, 338 U.S. 318, 319 (1950) (quoting statement made by the Patent Office Committee on Enrollment and Disbarment) (ellipses and internal quotation marks omitted). This duty of candor is codified in 37 C.F.R. § 1.56(a) as follows:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO examiner], which includes a duty to disclose to the [PTO examiner] all information known to that

individual to be material to patentability . . . .

A "[v]iolation of the duty of candor constitutes inequitable conduct." Avocent Redmond Corp. v. Raritan Americas, Inc., 921 F. Supp. 2d 229 (S.D.N.Y. 2013).

### Materiality

Under Therasense, the materiality required to establish inequitable conduct in the prosecution of a patent is but-for materiality – a defendant must show by a preponderance of the evidence that the PTO examiner would not have allowed the claim but for the non-disclosure or misrepresentation – and the Plaintiff or its attorney must have known that the reference was material. 649 F. 3d at 1292, 1295. The defendant must prove that the patentee had a "specific awareness of materiality"; general knowledge or negligence in not recognizing the materiality of the misrepresentation or omission will not suffice. Therasense, 694 F.3d at 1375.

The materiality of the Merrick Reference and the Merrick Hangers is not genuinely disputed. It cannot reasonably be argued that the Merrick Hangers would not have been material to the PTO's decision on the Application, because it is undisputed that the Merrick Reference depicted the Merrick Hangers and the patent examiner initially rejected the Application on the basis of the Merrick Reference. Secondarily, Plaintiff has offered no evidence to rebut Mr. Poms' assertion that the patent would not have been issued if the PTO examiner had been given either the high-resolution photographs or the physical embodiment of the Merrick Hangers.

Mr. Sonnabend protests that: "Defendants fail to distinguish between the Merrick Hanger Product reference and the Merrick Hanger Website Image reference. These two are distinct references that Defendants repeatedly meld into one. The former was not before the

PTO examiner, while the latter was."[4]  (Pl. Opp. at 8.)  This distinction is not legally relevant, however, because it is clear that evidence that is not before the PTO examiner may very well be material.  See Eisai Co. v. Dr. Reddy's Laboratories, Ltd., 472 F. Supp. 2d 493, 524 (S.D.N.Y. 2006) ("[T]he duty of disclosure is neither legally nor logically limited to information affirmatively indicated by the examiner to be important, as the duty would then add little to the patenting process."), aff'd, 533 F.3d 1353 (Fed. Cir. 2008).

### Intent to Deceive the PTO Examiner

Proof of inequitable conduct requires clear and convincing evidence of a specific intent to deceive the PTO examiner.  Therasense, 649 F.3d at 1290.  To satisfy the intent element, the accused infringer must demonstrate that the specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence."  Therasense, 649 F. 3d at 1297 (quoting Star Scientific Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir.2008)) (internal quotation marks omitted).  "'Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence' on a motion for summary judgment or after a trial."  Jersey Asparagus Farms, Inc. v. Rutgers Univ., 803 F. Supp. 2d 295, 312 (D.N.J. 2011) (quoting Therasense, 649 F. 3d at 1290).  Selectively withholding material information is indicative of an intent to deceive for the purposes of inequitable conduct. Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1335 (Fed. Cir. 2012).

The Court finds that the only reasonable inference to be drawn from the undisputed facts is that Mr. Sonnabend intended to deceive the PTO examiner about a reference

---

[4]  The Merrick Hanger was not "before the patent examiner" for the simple reason that Mr. Sonnabend chose not to disclose it, despite possessing photographs and the physical Merrick Hangers.  Relying on this fact as an argument against the materiality of the Merrick Hanger is nonsensical.

he knew was material and that he in fact did so. It is undisputed that Mr. Sonnabend had a telephone interview with the PTO examiner, after which he filed the Amended Application which distinguished the Application from the Merrick Reference on the basis of non-abutment of the cascade hooks of the hangers portrayed in the Merrick Reference. It is also undisputed that the top and bottom surfaces of the cascade hook members of the Merrick Hangers do in fact abut when nested, and that Mr. Sonnabend had Merrick Hangers in his possession at the time he spoke to the PTO examiner. Logic dictates the conclusion that Mr. Sonnabend misrepresented the cascade hook feature of the Merrick Hangers to the PTO examiner in the telephone conversation, rendering the examiner receptive to the Amended Application, which draws a false distinction between Plaintiff's hangers and the Merrick Reference.[5]

Mr. Sonnabend's submission of the Amended Application, following the telephone interview with the PTO examiner, demonstrates unequivocally that he understood that the precise features of the physical Merrick Hangers were material to the Application, and that he withheld evidence from the PTO examiner as to the physical configuration of the Merrick Hanger that was depicted in the Merrick Reference. Only after Mr. Sonnabend had distinguished the Merrick Reference on the basis of non-abutment was the Notice of Allowability issued. Plaintiff offers no evidence to controvert Mr. Poms' conclusion that "the only way the examiner could have reached the conclusion that the hooks shown in the image were not in contact with each other was if the plaintiff's attorney [Mr. Sonnabend] told him, during their oral conversation, that the hooks were not touching." Rather, when given the opportunity, Mr.

---

[5]   In the Amended Application, Mr. Sonnabend wrote that Claims 1 and 14 of the Application have been amended to include abutting cascading hook members in order to "distinguish[] the claims from Arnold in view of Merrick."

Sonnabend testified only that he had no memory of any of the details discussed during the interview.

Mr. Sonnabend's continued pattern of disingenuous behavior, even after filing the Amended Application, strengthens the inference of his intent to deceive the PTO examiner. Mr. Sonnabend proffers that he originally disclosed the low-resolution Merrick Reference out of "an abundance of caution" even though he did not know whether it was prior art. Even after the PTO examiner had determined that the Merrick Reference constituted prior art, and Mr. Sonnabend had led the examiner to an incorrect conclusion about the Merrick Hangers and amended the Application to turn on that incorrect conclusion, Mr. Sonnabend did not disclose either the physical Merrick Hangers or the high-resolution photographs of the Merrick Hangers (both far clearer demonstrations of how the hanger worked than the thumbnail images in the Merrick Reference). He now claims that he did not do so because he did not know that they were prior art. Mr. Sonnabend selectively withheld the most relevant information from the PTO examiner, which is indicative of a clear intent to deceive. See Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d at 1335 (court found inequitable conduct based on "affirmative conduct by the applicants showing not only specific awareness of materiality, but careful and selective manipulation of where, when, and how much of the most material information to disclose"). His sophistry concerning the logic underlying his behavior is completely inconsistent with that behavior and is thus insufficient, in light of the compelling circumstantial evidence that he provided false information to the examiner, to frame a genuine issue of material fact regarding his intent to deceive the examiner.

Plaintiff's argument that it could properly withhold the physical embodiments of referenced prior art is baseless. In American Calcar, Inc., v. American Honda Motor Co., the

court rejected a similar strategy, finding that an inventor's disclosure of the prior art in the form of a manual for a navigation system–which system the inventor had used while developing the device that he sought to patent–but failure to disclose the operational details of the actual navigation system including photographs of the navigation system itself, indicated a specific intent to deceive the PTO under Therasense.  No. 06 Civ. 2433, 2012 WL 1328640, at *11 (S.D. Cal. Apr. 17, 2012).  Here, Mr. Sonnabend prosecuted the patent in much the same way, offering the low-resolution photographs wherein the abutting cascade hooks are not visible, but failing to disclose either the physical Merrick Hangers or higher resolution photographs, in a way meant to lead the PTO examiner into allowing his Claims 1 and 14 based on the false representation that the hangers depicted in the Merrick Reference did not have abutting cascading hooks.

Accordingly, there is no genuine dispute of material fact.  Defendants have, furthermore, carried their burden of demonstrating by clear and convincing evidence that Plaintiff deliberately misled the PTO as to the key structural feature of the hangers depicted in the Merrick Reference and withheld photographs and physical evidence that would have precluded the issuance of the '300 Patent.  Defendants have thus proven but-for materiality of the misrepresentation and the withholding of information.  The undisputed evidence of record is also sufficient to require the conclusion that Plaintiff specifically intended to deceive the PTO examiner as to the key structural feature of the hangers depicted in the Merrick Reference.  Mr. Sonnabend's proffer as to his belief that he had no legal obligation to disclose the physical hangers and the high-resolution photographs does not raise any triable issue of facts as to the existence of any proper justification for his submission of deceptive information to the PTO examiner in the telephone interview and the Amended Application.

Defendants are, accordingly, entitled as a matter of law to judgment declaring the

'300 Patent invalid as procured through inequitable conduct, and Plaintiff's cross-motion for summary judgment must be denied. In light of the invalidation of the '300 Patent, Plaintiff's infringement claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment for non-infringement is granted and the '300 patent is declared invalid as the product of inequitable conduct and therefore it is unenforceable. Plaintiff's claims of infringement are dismissed. Plaintiff's motions for summary judgment and to strike the testimony of William Poms are denied in their entirety. The Clerk of Court is directed to terminate all pending motions with the exception of docket entry number 200, enter judgment in Defendants' favor and close this case.

Defendants may make any available motion for attorney's fees within thirty (30) days after the entry of judgment, in accordance with Federal Rule of Civil Procedure 54.

SO ORDERED.


Dated: New York, New York
September 30, 2013

/S
LAURA TAYLOR SWAIN
United States District Judge