**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

WORLDWIDE HOME PRODUCTS, INC.,

                    Plaintiff

    v.

TIME INC., BED BATH & BEYOND INC.,
COHESION PRODUCTS, INC., and SHERRY
HANSON,

                    Defendants

----------------------------------------------------------------x

NO. 1:11-cv-3633 (LTS)(MHD)

ECF Case

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR RECOVERY OF ATTORNEY FEES AND RELATED EXPENSES**

## TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………………….1

II.   PRELIMINARY STATEMENT…………………………………………………...2

III.  ARGUMENT…………………………………………………………….4

      A.   LEGAL STANDARD……………………………………………….....4

      B.   THIS CASE IS "EXCEPTIONAL" UNDER 35 U.S.C. § 285……………………………...5

      C.   ATTORNEY FEES ARE APPROPRIATE IN THIS CASE…………………………………..8

IV.   DEFENDANTS' REASONABLE FEES AND COSTS SHOULD BE AWARDED…......9

      A.   THE REQUESTED FEES ARE REASONABLE……………………………………10

      B.   THE COURT SHOULD AWARD DEFENDANTS ITS COSTS…………………………14

V.    ATTORNEY SONNABEND SHOULD BE LIABLY WITH WHP FOR THE AWARD
      OF FEES AND COST...……………………………………………………14

VI.   CONCLUSION………………………………………………………..16

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                    <u>PAGE(S)</u>

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*,
     267 F.3d 1370, 1380 (Fed. Cir. 2001)……………………………………………6,7,8,9,16

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
     393 F.3d 1378, 1381 (Fed. Cir. 2005)…………………………………………………5,7

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*,
     394 F.3d 1348 (Fed. Cir. 2005)……………………………………………………….8

*Bywaters v. United States*,
     670 F.3d 1221, 1230 (Fed. Cir. 2012)………………………………………………...9

*Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*,
     962 F.2d 1048, 1050 (Fed. Cir. 1992)……………………………………….........4,5

*Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*,
     723 F.2d 1573, 1578 (Fed. Cir. 1983)…………………………………………………14

*Chambers v. NASCO, Inc.*,
     501 U.S. 32, 43-44 (1991)…………………………………………………......15

*Clark v. Mortenson*,
     93 F. App'x 643, 652 (5th Cir. 2004)……………………………………………………2

*Clark v. United Parcel Serv., Inc.*,
     460 F.3d 1004, 1011 (8th Cir. 2006)……………………………………………7,14

*Cybor Corp. v. FAS Techs., Inc.*,
     138 F.3d 1448, 1460 (Fed. Cir. 1998)…………………………………………………5

*Dweck v. Amadi*,
     10 Civ. 2577, 2012 WL 3020029 at *4 & n.5 (S.D.N.Y. July 6, 2012)……………………..11

*F.J. Hanswher Enterps., Inc. v. Emerald River Dev., Inc.*,
     244 F.3d 1128, 1136 (9th Cir. 2001)…………………………………………………...15

*Fox Indus., Inc. v. Structural Preservation Sys.*, Inc.,
     922 F.2d 801, 804 (Fed. Cir. 1990)……………………………………………………..17

*Hensley v. Eckerhart*,
     461 U.S. 424, 433 (1983)…………………………………………………………5,9

*Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*,
   12 CIV. 5456 KMW AJP, 2013 WL 174226 at *6 (S.D.N.Y. Jan. 17, 2013)………………11

*Mathis v. Spears*,
   857 F.2d 749, 755 (Fed. Cir. 1988)…………………………………………………...10,14,17

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907, 915-16 (Fed. Cir. 2012)……………………………………………………10

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   726 F.3d 1359 (Fed. Cir. 2013)……………………………………………………………10

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*,
   09 Civ. 8665, 2010 WL 5538552 at *3 (S.D.N.Y. Dec.6, 2010)……………………………12

*Phonometrics, Inc. v. Westin Hotel Co*,
   350 F.3d 1242 (Fed. Cir. 2003)……………………………………………………………15

*Pyatt v. Raymond*,
   10 Civ. 8764, 2012 WL 1668248 at *6 (S.D.N.Y. May 10, 2012)…………………………11

*Sensonics, Inc. v. Aerosonic Corp.*,
   81 F.3d 1566, 1574 (Fed. Cir. 1996)………………………………………………………7

*Synthon IP, Inc. v. Pfizer Inc.*,
   484 F. Supp. 2d 437, 443 (E.D. Va. 2007) aff'd, 281 F. App'x 995 (Fed. Cir. 2008)………6,7

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
   2007 WL 840368, *3 (S.D.N.Y. Mar. 21, 2007)…………………………………………...9

*Taltech Ltd. v. Esquel Enterprises Ltd.*,
   609 F. Supp. 2d 1195, 1211 (W.D. Wash. 2009)…………………………………………...6

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276, 1289 (Fed. Cir. 2011)……………………………………………………...5

*TigerCandy Arts, Inc. v. Blairson Corp.*,
   09 Civ. 6215, 2012 WL 760168 at *9 (S.D.N.Y. Feb.23, 2012)……………………………11

*Topalian v. Ehrman*,
   3 F.3d 931, 934 (5th Cir. 1993)…………………………………………………………...15

*U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.*,
     09 Civ. 5517, 2009 WL 4351962 at *7 (S.D.N.Y. Dec.1, 2009)……………………………12

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
     208 F.3d 981, 987 (Fed. Cir. 2000)……………………………………………………………..10

## RULES

Fed. R. Civ. P. 11……………………………………………………………………………….3,5,8

Fed. R. Civ. Pro. 59(e)………………………………………………………………….....1

## STATUTES

28 U.S.C. § 1927………………………………………………………………………1,2,3,14,15,6

28 U.S.C. § 1961……………………………………………………………………………..17

35 U.S.C. § 285……………………………………………………………1,2,4,5,8,9,14,15,16

iv

## I.       INTRODUCTION

Defendants, Bed Bath & Beyond Inc. ("BBB") and Cohesion Products, Inc. ("Cohesion"), the prevailing parties in this litigation, move for (1) a declaration by the Court that this is an exceptional case and (2) an award of Defendants' reasonable attorney fees and costs incurred in defending this action.  Specifically, pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927, as well as the inherent authority of the Court to punish improper conduct by the attorneys appearing before it, this Court has authority to award Defendants' reasonable attorney fees and costs against both WHP and its attorney, Jeffrey Sonnabend.

Defendants seek an order requiring Plaintiff Worldwide Home Products, Inc. ("WHP") and its attorney, Jeffrey Sonnabend ("Attorney Sonnabend"), to pay Defendants a total of $875,472.15[1] for fees and expenses incurred in defending this bad faith lawsuit.  Of the $875,472.15, $739,743.09 represents attorney fees and $135,729.06 represents the costs incurred by Defendants in this action.

This motion is supported by the following memorandum of points and authorities; the accompanying Declarations of Edward F. O'Connor ("O'Connor Decl."), Uleses C. Henderson, Jr. ("Henderson Decl."), and all accompanying exhibits to such declarations; and all the pleadings and papers on file in this action.

---

[1] On October 23, 2013, Plaintiff's counsel notified The Eclipse Group of Plaintiff's intent to file a motion with the Court, pursuant to Fed. R. Civ. Pro. 59(e), to alter, amend, vacate and set aside the Memorandum Opinion and Order entered on September 30, 2013.  Included in the total attorney fees is a flat rate charge of $9,500 for this motion and $12,000 for the fees and expenses associated with responding to the upcoming motion to alter, amend, vacate and set aside the Memorandum Opinion and Order entered on September 30, 2013.

## II.     PRELIMINARY STATEMENT

Plaintiff's counsel, Jeffrey Sonnabend ("Attorney Sonnabend"), represented WHP not only in this litigation but also, and most importantly, in prosecuting the patent, U.S. Patent No. 7,938,300 ("the '300 patent"), that this Court invalidated in its Memorandum Opinion and Order, dated September 30, 2013 (the "September 30 Order") (ECF Doc. No. 225).  In that Order, this Court invalidated the patent specifically because WHP, through Attorney Sonnabend, had engaged in inequitable conduct in the procurement of the '300 patent.  As this Court found Attorney Sonnabend, engaged in a "continued pattern of disingenuous behavior" and "selectively withheld the most relevant information from the PTO examiner."  September 30 Order at 16.  Because Attorney Sonnabend "specifically intended to deceive the PTO" in prosecuting the '300 patent, this Court concluded that Attorney Sonnabend and WHP had engaged in inequitable conduct.  *Id*. at 17.

It would have been bad enough had Attorney Sonnabend and WHP's misconduct ended with the issuance of the fraudulently obtained '300 patent.  Pushing on with full awareness of his misconduct, Attorney Sonnabend, on behalf of WHP, doubled-down by filing this suit—subjecting Defendants to extraordinary inconvenience, interrupting and interfering with Defendants' business relationships, and forcing Defendants to incur extraordinary legal fees and costs in defending against a patent that should have never issued in the first place.  Those fees and costs are the focus of this motion.

WHP's and Attorney Sonnabend's "continued pattern of disingenuous behavior" clearly supports this case as exceptional under 35 U.S.C. § 285 and supports an award of Defendants' attorney fees and costs.  *See* September 30 Order at 16.  Further support to award fees and costs is found under the Court's inherent authority to sanction attorneys for their misconduct before the Court and under 28 U.S.C. § 1927.  *See Clark v. Mortenson*, 93 F. App'x 643, 652 (5th Cir. 2004)

("Although it is true that Rule 11 provides for sanctions against the individual attorney or party or agent of a party who signs an abusive pleading or motion and § 1927 is limited to attorney misconduct, a district court may rely on its inherent powers to sanction the responsible party.") Accordingly, Attorney Sonnabend and WHP should both be sanctioned for filing and litigating a lawsuit based on a patent fraudulently secured by Attorney Sonnabend for WHP. In particular:

- WHP and Attorney Sonnabend threatened Defendants with infringement prior to the patent application issuing. *See* ECF Doc. No. 142; Ex. A-9 at 2.

- Thereafter, Attorney Sonnabend not only "selectively withheld the most relevant information from the PTO examiner" with a clear "intent to deceive the PTO examiner," but also, provided false information to the examiner, which lead the examiner to allows his claims. *See* September 30 Order at 16. "Logic dictates the conclusion that Mr. Sonnabend misrepresented the cascade hook feature of the [prior art] Merrick Hangers to the PTO examiner in [a] telephone conversation [with the examiner], rendering the examiner receptive to the Amended Application, which draws a false distinction between Plaintiff's hangers and the Merrick Reference." September 30 Order at 15.

- Attorney Sonnabend was given the opportunity to correct his disingenuous behavior when Defendants' counsel wrote him, prior to the issuance of the patent, informing him of the inaccurate representations in the record about the Merrick hanger. *See* September 30 Order at 5. Defendants' counsel provided Attorney Sonnabend with high resolution images showing the inaccuracy and reminded him of his affirmative duty of candor and good faith that required him to withdraw the application from issuance and disclose the misrepresentations. September 30 Order at 6. Still,

3

Attorney Sonnabend did nothing in response to the receipt of this letter and allowed the patent to issue, knowing that doing so would reveal his earlier misrepresentations and withholdings. *Id.*

- Once the '300 patent issued, fully aware of the fraud underlying his claims against Defendants, Attorney Sonnabend nevertheless filed suit on behalf of WHP against BBB, Cohesion, Time Inc. ("Time"), and Sherry Hanson ("Ms. Hanson").

- During the course of litigating this matter, WHP ignored numerous opportunities to withdraw its claims—choosing instead to push ahead with a scorched earth approach to this baseless litigation.

In summary, Attorney Sonnanbend, having full knowledge of how the '300 patent was procured and being so informed by Defendants' counsel, nevertheless made a conscience decision to institute and pursue the present lawsuit. WHP and Attorney Sonnabend's acts amount to not only inequitable conduct before the PTO, but also the pursuit of vexatious and unjustified litigation instituted in bad faith. Either of these offenses alone warrants the award of attorney fees and cost to Defendants. Together, an award is inescapable.

## III.   ARGUMENT

### A.   LEGAL STANDARD

The Patent Statute authorizes an award of attorney fees to a prevailing party in an "exceptional" case. *See* 35 U.S.C. § 285. Defendants qualify as the prevailing party for the purpose of this motion, with Defendants' alternative motions for summary judgment on non-infringement and invalidity each being granted. *See* September 30 Order at 16.

A decision to award attorney fees proceeds in two steps. First, the district court must determine whether the case is exceptional. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d

1048, 1050 (Fed. Cir. 1992).  A case is "exceptional" under 35 U.S.C. § 285 "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, ***fraud or inequitable conduct in procuring the patent***, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005) (emphasis added); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050-51 (Fed. Cir. 1992) ("In the case of awards to prevailing accused infringers ... 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent.").

Second, once the case is declared exceptional, the district court decides whether the requested fees and costs are appropriate.  *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed. Cir. 1998).  Under Federal Circuit precedent, reasonable fees are determined using the "lodestar" method -- i.e., "reasonable rates multiplied by reasonably expended hours." *Bywaters v. United States*, 670 F.3d 1221, 1230 (Fed. Cir. 2012); *see also, Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

### B.    THIS CASE IS "EXCEPTIONAL" UNDER 35 U.S.C. § 285

 WHP's baseless assertion of the '300 patent against Defendants renders this case exceptional for at least two reasons.

*First*, this case is exceptional because the asserted patent was procured through inequitable conduct before the PTO.  One of the most common bases for finding a patent case "exceptional" is when the patentee and its attorney are guilty of inequitable conduct in procuring the patent-in-suit. "Prevailing on a claim of inequitable conduct often makes a case "exceptional," leading potentially to an award of attorney fees under 35 U.S.C. § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*,

649 F.3d 1276, 1289 (Fed. Cir. 2011) (citing *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001)).

For example, in *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, the Federal Circuit reviewed a case strikingly similar to this one.  In both matters, the patentee's patent was invalidated based on material information known to the patentee but withheld from the PTO.  On appeal, the Federal Circuit found that the willful misconduct of the patentee's attorney during the prosecution of the patent justified the lower court's finding of inequitable conduct and its award of attorney fees stemming from such inequitable conduct.  *Id.* at 1385.  The Court also found that the patentee was appropriately determined to be liable for attorney fees because it was responsible for its attorney's misconduct, *i.e.*, that the attorney's misconduct is chargeable to the applicant.  *Id.*

Likewise, district courts have consistently found cases "exceptional" where they are based on the assertion of a patent procured through inequitable conduct.  *See, e.g., Taltech Ltd. v. Esquel Enterprises Ltd.*, 609 F. Supp. 2d 1195, 1211 (W.D. Wash. 2009); *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005); *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 443 (E.D. Va. 2007) aff'd, 281 F. App'x 995 (Fed. Cir. 2008).

As found by this Court in its extensive September 30 Order granting Defendants' motion for summary judgment, Plaintiff's attorney not only engaged in willful and material misrepresentations of fact about the prior art, but also selectively withheld the most relevant information from the PTO examiner with a clear intent to deceive the PTO.  These acts resulted in the issuance of the patent, which patent is the foundation of the claims asserted in this case.  Either of these acts – the affirmative misrepresentations or selective wiholding – alone justifies a finding that this case is exceptional.

Further, although inequitable conduct before the PTO alone renders this case "exceptional," the Federal Circuit has recognized that "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) (citing *Sensonics, Inc. v. Aerosonic Corp.,* 81 F.3d 1566, 1574 (Fed. Cir. 1996).

While the facts of this case support it being deemed exceptional with any showing of litigation misconduct and unprofessional behavior, Plaintiff's bad faith litigation (both in bringing the matter and the conduct during the litigation), itself also supports a finding that this case is exceptional.  *See Brooks Furniture Mfg.,* 393 F.3d at 1381; *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 442 (E.D. Va. 2007) *aff'd*, 281 F. App'x 995 (Fed. Cir. 2008)  ("[W]hile [Plaintiff's] inequitable conduct before the PTO is alone sufficiently compelling to render this case exceptional, it should also be noted that [Plaintiff's] litigation strategy and conduct in the course of these proceedings further supports an exceptional case finding.")

It is also well established that the Court has inherent authority to sanction attorney misconduct in cases before it.  *See, e.g., Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006).  As this Court found, there was no genuine dispute of fact that the '300 patent would not have issued but for Attorney Sonnabend's misconduct.  *See* September 30 Order at 13.  Through a letter sent to WHP's counsel before this litigation, and numerous letters, expert reports, and motions during this litigation, WHP was made aware of the misconduct of its counsel and clear unenforceability of the '300 patent.  Nevertheless, WHP decided to forge ahead with this frivolous lawsuit and continue its assertion of an invalid patent against Defendants, forcing BBB and Cohesion to incur great litigation expenses despite being fully informed of overwhelming evidence making those positions more and more untenable.

7

Further, during the course of litigation, Plaintiff engaged in bad faith tactics and unprofessional behavior by, among other things, (i) naming former Defendants Time and Hanson as defendants in this action,[2] (ii) filing countless unnecessary motions with the court, including a meritless Rule 37 sanctions motion, (iii) hiding behind privilege to avoid addressing misconduct (having chosen to litigate a case involving a patent that counsel knew was procured fraudulently), (iv) making derogatory remarks toward opposing counsel, (v) writing countless sur-reply letters to the Court outside of the normal briefing schedule, and (vi) filing the same lawsuit against ThreeSixty Sourcing when the Court denied him a 30(b)(6) deposition of the company. *See* Henderson Decl. at ¶¶3-49. These unprofessional acts further exemplify Plaintiff's continued pattern of disingenuous behavior, as all the acts were committed with improper purpose, including harassment, delay, and for purposes of needlessly increasing the cost of litigation.

In summary, Plaintiff's inequitable conduct before the PTO and its continued prosecution of this litigation despite its knowledge of the misrepresentations makes this case an "exceptional" case under the provisions of 35 U.S.C. § 285.

### C.   ATTORNEY FEES ARE APPROPRIATE IN THIS CASE

Because this case was premised entirely upon a patent obtained through what was essentially a fraud on the Patent Office, it is appropriate that Defendants be awarded ***all*** of the costs and attorney fees incurred in defending this case. *Brasseler*, 267 F.3d at 1386. The *Brasseler* court held that "[Defendant] would not have incurred any fees generated in defense of this suit had [Plaintiff]

---

[2] Because Time and Hanson were added to this lawsuit for an improper purpose, and because WHP's claims against these parties were legally baseless and ultimately dismissed (for the specific reasons cited in Defendants Rule 11 letter and motion), Defendants sought Rule 11 sanctions against WHP and Attorney Sonnabend. This motion is still pending before the Court as ECF Docket No. 200.

not committed inequitable conduct in pursuit of its patent and had it not filed a claim for

infringement of that patent, known by [Plaintiff] to have been improperly obtained.  Thus, [Plaintiff]

should be charged with the expense of defending against this frivolous lawsuit".  *Id.*

Like *Brasseler*, Plaintiff's attorney's conduct in this case was particularly egregious in that

he not only obtained the patent through inequitable conduct, he filed suit on that patent knowing full

well that it would not have issued but for his misconduct, thus perpetrating a fraud on this Court.  As

such, Defendants would not have incurred any of the fees generated in defense of this suit had

Plaintiff (1) not committed inequitable conduct in pursuit of its patent and (2) not filed a claim for

infringement of a patent, known by Plaintiff to have been improperly obtained.  Thus, Plaintiff and

its attorney should be charged with the full expense of defending against this frivolous lawsuit.

## IV.   DEFENDANTS' REASONABLE FEES AND COSTS SHOULD BE AWARDED

Once a party has established that it is entitled to an award of attorney fees, the district

court decides what is reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Federal

Circuit has emphasized that a reasonable attorney fee is a determination that lies primarily within the

discretion of the district court, which may consider all the relevant circumstances in a particular

case.  *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 2007 WL 840368, *3 (S.D.N.Y. Mar. 21,

2007) (citation omitted).

Courts determine the amount of fees awarded under 35 U.S.C. § 285 using the lodestar

analysis—i.e., "reasonable rates multiplied by reasonably expended hours."  *Bywaters v. United

States*, 670 F.3d 1221, 1230 (Fed. Cir. 2012).  There is a strong presumption that the lodestar amount

represents a reasonable fee, and "[a] district court seeking to adjust the lodestar figure must justify

its deviation with specific evidence demonstrating that the factors considered are not adequately

subsumed within the lodestar calculation."  *Bywaters*, 670 F.3d at 1230.

The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000) (finding that a reasonable hourly rate may be determined by reference to the rates charged by lawyers in the same legal community with comparable skills and reputations.)  In determining a reasonable rate, a court may refer to American Intellectual Property Law Association ("AIPLA") surveys. *See, e.g., id.; see also Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988).

A.   THE REQUESTED FEES ARE REASONABLE

In connection with this case, Defendants are requesting a total of $875,472.15 in fees and expenses. *See* O'Connor Decl. at ¶3.  This total is more than reasonable, given that this is patent infringement case, the amount in controversy is several million dollars and the countless motions and unauthorized sur-replies filed by WHP, as well as the naming and deposing of parties to which Plaintiff's had no legal basis to assert a claim against.

Some benchmarks for comparison include:

o *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915-16 (Fed. Cir. 2012) – Federal Circuit affirmed award of $4.6 million (including $3,873,865.01 in attorney fees, and expert fees of $809,788.02)

o *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359 (Fed. Cir. 2013) – Federal Circuit affirmed award of $8.4 million in attorney fees on a finding that the case was exceptional.

o *AIPLA 2011 Survey*—Average fees and costs for patent litigation through end of discovery (not including pre-trial or trial):

| | |
|---|---|
| Amount in controversy under $1M | $490,000.00 |
| Amount between $1M and $25M | $1,600,000.00 |

Amount over $25M                                   $3,600,000.00

*See* Ex. A.

Here, the amount in controversy was well in excess of $1M.  Thus, compared to these

benchmarks, Defendant's attorney and expert fees incurred pale in comparison, and therefore are

quite reasonable.

Moreover, the $550 per hour rate charged by Defendants' lead counsel (with more than forty

years' litigation experience), the $300-400 per hour rate charged by all other attorneys (each with

over ten years' experience), and the $165 per hour charged by an associate (with five years'

experience) all are extremely reasonable and, in fact, lower than rates of attorneys in Manhattan with

comparable experience.  In the federal district courts of the State of New York, Southern and Eastern

District, judges sitting over other intellectual property cases have approved similar (indeed, higher)

fees. *See Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*, 12 CIV. 5456 KMW AJP, 2013 WL

174226 at *6 (S.D.N.Y. Jan. 17, 2013) (finding hourly rates ranging from $475 to $530 for partners

with over twenty-five years of copyright infringement experience reasonable and commensurate

with rates that attorneys in Manhattan with comparable experience); *Dweck v. Amadi*, 10 Civ. 2577,

2012 WL 3020029 at *4 & n.5 (S.D.N.Y. July 6, 2012) (citing cases approving $180 to $440 hourly

rates for intellectual property associates), report & rec. adopted, 2012 WL 3024185 (S.D.N.Y. July

24, 2012); *TigerCandy Arts, Inc. v. Blairson Corp.*, 09 Civ. 6215, 2012 WL 760168 at *9 (S.D.N.Y.

Feb.23, 2012) (finding that $500, not the $800 requested, was a reasonable hourly rate for partner

who "has been practicing law for twenty-eight years, specializes in intellectual property law, and has

been recognized as a skilled intellectual property attorney by several organizations."), report & rec.

adopted, 2012 WL 1948816 (S.D.N.Y. May 30, 2012); *Pyatt v. Raymond*, 10 Civ. 8764, 2012 WL

1668248 at *6 (S.D.N.Y. May 10, 2012) (citing cases approving $400 to $650 hourly rates for

11

partners in copyright and trademark cases); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, 09 Civ.

8665, 2010 WL 5538552 at *3 (S.D.N.Y. Dec. 6, 2010) (finding $657 per hour "is well within the

range of rates for law firm partners in the New York City area with significant intellectual property

law experience" and approving $395 to $435 associate rates), report & rec. adopted, 2011 WL 43459

(S.D.N.Y. Jan.5, 2011); *U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.*,

09 Civ. 5517, 2009 WL 4351962 at *7 (S.D.N.Y. Dec. 1, 2009) (Peck, M.J.) (finding that hourly

rates of $400 for partner and $295 for ninth year associate "are commensurate with (if not lower

than) the rates that attorneys in Manhattan with comparable experience charge and the rates that

Southern and Eastern District judges have approved in other intellectual property cases"), report &

rec. adopted, 2009 WL 5178023 (S.D.N.Y. Dec. 31, 2009).

     The amount of time and costs spent defending Defendants were also reasonable. The

following is a general breakdown of the attorney fees (including expert fees) incurred by Defendants

for the various phases in this litigation, as reflected in the invoices submitted herewith (O'Connor

Decl. Exs. 1A-E, 2):

| | |
|---|---|
| Answer/Counter-complaint (x2) | $26,577.50 |
| Motion for Judgment on Pleadings | $22,527.00 |
| Opposition to Motion to Amend | $9,129.50 |
| Opposition to Motion to Dismiss (x3) | $15,103.00 |
| Motion to Dismiss | $69,059.00 |
| Invalidity Contentions Under 102/103 | $17,784.00 |
| Claim Construction/Markman | $78,655.00 |
| Discovery | $256,672.00 |

| | |
|---|---|
| Expert Discovery | $15,978.00 |
| Opposition to Motion to Compel | $5,296.50 |
| Opposition to Motion – Markman Rec. | $9,562.00 |
| Motion – SJ Ineq. Cond | $29,901.50 |
| Motion – SJ Non-Inf. | $29,476.00 |
| Motion – Daubert | $24,017.00 |
| Motion to Quash | $1,160.50 |
| Motion In Limine | $16,877.50 |
| Motion for Summary Judgment re Damages | $15,351.50 |
| Motion for Rule 11 Sanctions | $18,367.50 |
| Opposition to Motion to Bifurcate | $3,934.50 |
| Local Counsel Engagement | $26,572.50 |

The number of hours expended by Defendants measured by each phase of the case, is also reasonable considering that WHP was seeking millions in damages.  If WHP had prevailed, Defendants might have been enjoined from selling its entire REAL SIMPLE Hanger line, losing millions in annual sales.  The case presented significant consequences for Defendants, and left them with no choice but to defend themselves vigorously.  Given the stakes, the work was both necessary and reasonable.  Indeed, the fees requested here are wholly reasonable when compared with the average fees spent on patent litigation in this district.

Therefore, whether measured in total or per phase of this case, when measured against any benchmark available for a "norm" in patent litigation, the conclusion should be that Defendants prosecuted this litigation very efficiently, and reasonably.

13

### B.      THE COURT SHOULD AWARD DEFENDANTS ITS COSTS

An award of fees under § 285 should include costs incurred in providing legal services related to the suit. *See Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *Mathis*, 857 F.2d at 754 (noting that § 285 permits reimbursement of legitimate expenses defendant was unfairly forced to pay.). These costs include reasonable out-of-pocket expenses incurred by attorneys and normally charged to their clients, including expenses for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, facsimiles, and courier services. *iLOR*, 2009 WL 3367391, at *8 (citation omitted).

Also included in the bill of costs are $32,847.50 in direct litigation expenses incurred in 2012 in connection with the financial/damage expert witness David Nolte from the firm Fulcrum Financial Inquiry LLP, (*See* O'Connor Decl. Ex. 7), and $24,500.00 in direct litigation expenses incurred in 2012 in connection with the patent expert witness William Poms, (*See* O'Connor Dec. Ex. 8).  Both experts were required in the competent defenses of this litigation, and both charges were reasonable for the services performed.

In summary, all of Defendant expenses were reasonably incurred and should be included in any fee award.  A bill of cost for Defendant's counsel is attached to the Declaration of Edward F. O'Connor as Exhibits 3-6.

## V.      ATTORNEY SONNABEND SHOULD BE LIABLY WITH WHP FOR THE AWARD OF FEES AND COST

The Court should find both WHP and Attorney Sonnabend jointly and severally liable for any fee award.  In this case, sanctions are appropriate against both WHP and Attorney Sonnabend under both 35 USC § 285, for the reasons set forth above, and under 28 U.S.C. § 1927, which

provides in pertinent part that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously ..." may have sanctions imposed against him.

"All federal courts are vested with inherent powers enabling them to manage their cases and courtroom effectively..." *F.J. Hanswher Enterps., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)). "District Courts wield their various sanction powers at their broad discretion." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993). Pursuant to 28 U.S.C. § 1927, this Court has the inherent authority to impose sanctions in the form of attorney fees and costs incurred as a result of attorney conduct "which so multiplies the proceedings in any case unreasonably and vexatiously." Objectively bad faith behavior on the part of the lawyer can trigger sanctions under 28 U.S.C. § 1927. *See Clark*, 460 F.3d at 1011 ("A court may require counsel to satisfy personally attorneys' fees reasonably incurred by an opposing counsel when counsel's conduct 'multiplies the proceedings in any case unreasonably and vexatiously.'") (quoting 28 U.S.C. § 1927).

Support for the position of sanctioning both WHP and Attorney Sonnabend is further found in *Phonometrics, Inc. v. Westin Hotel Co*, 350 F.3d 1242 (Fed. Cir. 2003). The Federal Circuit in *Phonometrics* affirmed the district court decision to award fees and costs pursuant to both 35 U.S.C. § 285 and 28 U.S.C. § 1927. *Id.* at 1248. The District court found that Phonometrics' continued maintenance of their action knowing that its claim could not meet the standards for infringement was "vexatious, supported an 'inference of bad faith' and 'resulted in unjustified multiplication of proceedings." *Id.* at 1247-48. The District court imposed liability in *Phonometrics* for all attorney fees and costs incurred by Defendants pursuant to 35 U.S.C. § 285 and on Phonometrics' counsel pursuant to 28 U.S.C. § 1927. *Id.* at 1248. The Federal Circuit affirmed this decision. *Id.*

15

WHP's counsel, along with WHP, should be held liable for the attorney fees and cost associated with this case.  It is clear from the September 30 Order that this Court attributes responsibility for the inequitable conduct before the PTO on Attorney Sonnabend.  It was Attorney Sonnabend that engaged in a "continued pattern of disingenuous behavior" and "selectively withheld the most relevant information from the PTO examiner."  September 30 Order at 16.  It is further clear from the record that, Attorney Sonnabend, being fully aware of the fraud underlying his claims against Defendants, nevertheless filed suit on behalf of WHP against BBB, Cohesion, Time, and Ms. Hanson.  Attorney Sonnabend then unjustifiedly multiplied his misconduct by filing this suit, ignoring numerous opportunities to withdraw its claims, and choosing instead to push ahead with a scorched earth approach to this baseless litigation, filing countless motions, avoiding addressing issues surrounding his misconduct, naming and deposing parties to which no claims existed, and filing countless unauthorized sur-relies with the Court.  *See*, *e.g.*, Henderson Decl. at ¶¶ 3-49.

It is clear that WHP is responsible for its attorney's misconduct under 35 USC § 285.  *See Brasseler*, 267 F.3d at 1385 (finding the patentee liable for attorney fees because it was responsible for its attorneys misconduct, *i.e.*, that the attorneys misconduct is chargeable to the applicant).  In this instance, the court should similarly find Attorney Sonnaband responsible for his personal misconduct under 28 U.S.C. § 1927, holding both WHP and its attorney, Jeffrey Sonnabend, jointly and severally liable for all Defendant's attorney fees and expenses in successfully defending this case.

## VI.   CONCLUSION

Plaintiff pursued litigation under a patent which this Court declared invalid, based on Plaintiff's attorney's selective failure to disclose the most relevant prior art and further based upon false misrepresentations made to the PTO.  This conduct was known to Plaintiff's at the time this

lawsuit was filed because the same attorney that prosecuted the patent before the PTO is trial counsel for Plaintiff WHP in this litigation.

No fee award can fully compensate Defendants for being subjected to bad faith litigation. *See Mathis*, 857 F.2d at 754.  The Court, however, can and should award Defendants it fees and cost spent defending itself against WHP's fraudulent claims, plus interest.  Finally, the Court can and should order post-judgment interest on any award of fees and costs pursuant to 28 U.S.C. § 1961. *See id.* at 754, 760-61.  Post-judgment interest is correctly calculated "from the date of the judgment establishing the right to the award." *Fox Indus., Inc. v. Structural Preservation Sys.*, Inc., 922 F.2d 801, 804 (Fed. Cir. 1990).

///

///

///

17

Accordingly, Defendants respectfully request that this Court award all of their costs (including experts' costs) and attorney fees, plus interest from September 30, 2013.  Attached to the Declaration of Edward F. O'Connor are copies of all of the itemized statements submitted to Defendants, which Defendants have in fact paid for all time through August 30, 2013.

Respectfully Submitted,

Dated:  October 29, 2013               /s/ Edward F. O'Connor
Edward F. O'Connor (admitted *pro hac vice*)
Uleses C. Henderson, Jr. (admitted *pro hac vice*)
**The Eclipse Group, LLP**
2020 Main St., Suite 600
Irvine, California 92614
Telephone: 949.851.5000
Facsimile: 949.851.5051
efo@eclipsegrp.com
uch@eclipsegrp.com

Attorneys for Defendants
BED BATH & BEYOND INC. and
COHESION PRODUCTS, INC.