UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WORLDWIDE HOME PRODUCTS, INC.,

        Plaintiff,

     -v-                               No.  11CV3633-LTS-MHD

BED, BATH AND BEYOND, INC. et al.,

        Defendant.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Plaintiff, Worldwide Home Products, Inc. ("Plaintiff"), moves pursuant to Federal Rule of Civil Procedure 59(e) to alter, amend, vacate, or set aside the September 30, 2013, Memorandum Opinion and Order (the "Order") and Clerk's Judgment entered by the Court in favor of Defendants, Bed, Bath & Beyond, Inc. and Cohesion Products Inc. (collectively, "Defendants").  In the Order, the Court granted summary judgment in Defendants' favor on Plaintiff's patent infringement claims and found that Plaintiff's patent, U.S. Patent Number 7,938,300 (the "'300 Patent"), was unenforceable due to inequitable conduct.  Plaintiff argues that the Order was based on an incorrect understanding of material facts and resulted in injustice.

### DECISION ON MOTION FOR RECONSIDERATION

        It appears that both the parties and the Court mistakenly believed that the serial numbers of certain physical embodiments of hangers made by the Merrick Engineering [Company] ("Merrick") and provided to Plaintiff's attorney by Defendant's counsel were the same as those of a Merrick hanger product depicted in a brochure that was prior art in relation to Plaintiff's claimed invention.  The evidence submitted in support of Plaintiff's Rule 59(e)

motion for reconsideration includes side-by-side photographs of the physical hangers associated

with the two different serial numbers – C90601 (the model number depicted in the prior art

brochure) and C90610 (the model number that was the subject of communications and

high-resolution photographs sent to Plaintiff by Defendants' counsel) – and testimony of

Merrick representatives and of Plaintiff's former attorney Jeffery Sonnabend.  The Court has

considered thoroughly all of the original motion submissions as well as all of the additional

material submitted in support of and in opposition to the motion for reconsideration.

In light of the mistake, the Court grants Plaintiff's motion for reconsideration.

Upon reconsideration, and for the reasons set forth below, the Court grants summary judgment

of invalidity in favor of Defendants, denies Plaintiff's motion to strike the inequitable conduct

defense and an expert report that had been proffered in support f Defendants' motion, and denies

Plaintiff's motion for summary judgment.

DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

The remainder of this Memorandum Opinion and Order supersedes, nunc pro

tunc, the Court's September 13, 2013, Order.

Plaintiff, Worldwide Home Products, Inc. ("Plaintiff"), brings this suit against

Defendants Bed, Bath and Beyond, Inc., and Cohesion Products Inc. ("Defendants"), for patent

infringement, claiming that the "Real Simple Slimline Hanger" (the "Slimline Hanger")

infringes upon U.S. Patent No. 7,938,300 (the "'300 Patent").  Defendants move pursuant to

Federal Rule of Civil Procedure 56 for summary judgment, asserting that the '300 Patent is

invalid because its allowance was procured through inequitable conduct.  Plaintiff moves for

summary judgment dismissing Defendants' inequitable conduct defense, asserting that

Defendants' evidence is insufficient to establish invalidity based on inequitable conduct.

Plaintiff also moves to strike the Report of William Poms (the "Poms Report"), which Defendants have proffered in support of their summary judgment motion, and for preclusion of any testimony by Mr. Poms.

For the following reasons, the Court denies Plaintiff's motion to strike the Poms Report and preclude Mr. Poms' testimony, denies Plaintiff's summary judgment motion, grants Defendants' motion for summary judgment declaring the '300 Patent invalid as the product of inequitable conduct and, accordingly, dismisses Plaintiff's infringement claims and directs entry of judgment in Defendants' favor.

Background[1]

The '300 Patent is directed to a clothing hanger having "supporting means in the form of a cascade hook for supporting additional hangers therefrom." ('300 Patent at 1:52-54.) Multiple units of the hanger can be arranged in two configurations. In the first configuration, the hangers are "nested" by placing one hanger in front of another and inserting the back hanger's "cascade hook" through a hole in the body of the front hanger. In the second configuration, one hanger dangles by its hook member from the other hanger's cascade hook member.

Defendants allege that Plaintiff engaged in inequitable conduct to procure the '300 Patent in that, during the prosecution of the patent, Plaintiff's counsel, Jeffrey Sonnabend, Esq., knowingly provided false information to the United States Patent and Trademark Office (the "PTO") examiner concerning the hangers depicted in a product brochure that constituted prior art.

Mr. Sonnabend prosecuted U.S. Application Serial No. 12/182,351 (the "Application"), which resulted in the issuance of the '300 Patent, beginning in July 2008. On

---

[1]     The following material facts are undisputed unless otherwise noted.

February 4, 2010, while the Application was still pending, Plaintiff sent Defendant Bed Bath and

Beyond a cease and desist letter asserting that the Slimline Hangers "will be deemed an

infringing product" because Plaintiff "fully expect[ed] the patent to issue in the coming months."

(Docket entry no. 142 (the "O'Connor Decl."), Exs. E and A-1-12.)  On April 27, 2010, Mr.

Sonnabend filed with the PTO an information disclosure statement (the "IDS") related to the

Application.  (Id. Ex. 2A.)  In the IDS, Sonnabend disclosed a website image of a printed

product brochure offering for sale certain Merrick hangers, product number C90601-A (the

"Merrick Reference"), showing hangers that had apparent similarities to the hanger that was the

subject of the Application; the brochure was undated.  (Id. Exs. A-2, A-3, and A-4.)  Plaintiff's

IDS identified the Merrick Reference as a Non-Patent Literature Document, describing it as a

"Product Brochure for MERRICK Hanger products (date unknown)."  The Merrick Reference

included low-resolution "thumbnail" images of six hangers that were nested together, labeled

with product identification number C90601-A.  Mr. Sonnabend was also in possession of a

physical version of the Merrick nesting hangers but did not provide any physical Merrick

hangers to the examiner.

On October 5, 2010, the PTO examiner rejected certain claims in the Application,

citing the Merrick Reference, which the examiner had dated to August 10, 2006, by using an

internet archive service.  (Id. Exs. A-6 and A-7.)  Among the claims rejected were claims 1, 2,

14, and 15.  In the notice of rejection, the examiner noted that the Merrick Reference teaches a

group of six identical hangers that are nested together.  (Id. Ex. A-5 at 5.)  Specifically,

regarding the Application's claims that the '300 Patent hangers abut one another for "easy

storage and transportation of hangers while also providing grouping of hangers for purchase,"

the PTO examiner observed that "MERRICK teaches a group . . . of identical garment hangers

(C90601-A12 or C90601-A) . . . being nested together . . . so that the front surface of one hanger abuts against a rear surface of another hanger wherein the top and bottom of both hanger are affixed in a common horizontal plane . . . Accordingly, it would have been obvious to a person of ordinary skill in the art to have provided . . . at least one second hanger where the front surface of the first hanger abuts against a rear surface of the second hanger with the top and bottom portion of each of the first and second hangers being nested and affixed in a common horizontal plane relative to one another . . . ." (O'Connor Decl., Ex. A-5, at 6).  The PTO examiner further noted that " MERRICK teaches such structure as shown in the blow up view of either C90601-A12 or C90601-A; however, regardless, the claim language of claims 5 and 10-13 is still in functional form wherein [a third-party patent] in view of MERRICK is completely capable of such function."  (Id. Ex. A-5 at 5-6.)

On October 12, 2010, Mr. Sonnabend discussed Application Claims 1, 2, 14, and 15 and the Merrick Reference in a telephone interview with the PTO examiner.  (Id. Ex. A-9 at 2.)  Mr. Sonnabend had physical Merrick hangers in his possession at the time of the telephone interview.  Following the interview, Mr. Sonnabend filed, with the PTO examiner, a document captioned "Amendment After Final," dated the same date as the interview (the "Amended Application"), that amended the Application's Claims 1 and 14, among others.  (Id. Ex. A-10 at 2, 6.)  Mr. Sonnabend asserted in the Amended Application that:

> Claim 1 and 14 have been amended to claim a cascade hook member having a top surface and a bottom surface, said cascade hook member extending from said front surface and the bottom surface of the cascade hook member of said first hanger abutting the top surface of the cascade hook member of said second hanger.  This distinguishes the claims from Arnold in view of Merrick.

(Id. Ex. A-10 at 8 (emphasis supplied).)  Fewer than two years later, on August 10, 2012, Mr. Sonnabend testified at his deposition taken in this litigation that he did not remember anything

that was said during the October 12, 2010, telephone interview with the PTO examiner.  (Id. Ex. B at 22.)  Mr. Sonnabend never disclosed any further information about the physical features of the Merrick hangers to the PTO examiner.  (Id. Ex. B at 45-46.)  There is nothing in the prosecution history or elsewhere in the evidentiary record on this motion practice to indicate that the examiner ever had access to any physical embodiment of the Merrick attachable hanger.  Mr. Sonnabend has confirmed under penalty of perjury, however, that he had some embodiment of the Merrick hanger,[2] and asserts that he declined to disclose it to the examiner simply because he had not confirmed that it was itself prior art, i.e., that it was offered for physical sale prior to the date of the Application.  He does not contend that the physical hanger that was in his possession prior to his conversation with the PTO examiner had a different attachment/nesting structure than the physical hangers of which Defendants' counsel later provided him high-resolution photographs.  (See Dec. 21, 2012 Sonnabend Decl., Ex. L to docket entry number 233 ("Rivkin Decl.").)

        The side-by side detailed photographs of the two models of Merrick hanger that Mr. Sonnabend possessed show a substantially identical central nesting hook structure and surround (the C90601 model appears to have a "dimple" structure at the upper end of the cascade hook, which appears otherwise identical in shape and function to the C90610 hanger), and show differences in strap hooks on the outer arms of the hangers.  (Rivkin Decl. Ex. F.)  There is nothing in the record indicating that Merrick changed the design of its attachment/nesting structure at any relevant time.  Indeed, Merrick's Rule 30(b)(6) witness testified that the only

_____

[1]        At the deposition, Mr. Sonnabend was asked: "[d]o you know whether you had in your possession actual Merrick hangers at the time you had this conversation with the examiner?"  He responded: "I believe that I did . . . . I'm willing to state on the record that I had it prior to that [interview with the PTO examiner]."  (Id.)

difference between the C90601 hangers and the C90610 hangers was pack size even though, on

closer examination, differences may be observed in the dress strap configurations.  (Rivkin

Decl., Exs. N, at 16-17 and F.)

        Mr. Sonnabend testified that, although he had provided the Merrick Reference to

the PTO examiner "out of an abundance of caution," he did not provide the examiner with the

physical version of the hangers.  (Id.)  At the deposition Mr. Sonnabend refused, on the basis of

attorney-client privilege, to explain his failure to provide the physical Merrick hangers to the

PTO examiner.  (Id. Ex. B at 45-46.)  It was only later, in a December 21, 2012, affidavit

proffered in support of Plaintiff's summary judgment motion, that Mr. Sonnabend asserted that

he believes that the physical Merrick hangers that he possessed constituted a reference entirely

separate from the Merrick Reference consisting of the website version of the hanger brochure,

that he had been unable to determine whether the Merrick hangers, whose packaging the parties

now acknowledge bears a slightly different product number from the product numbers listed on

the Merrick Reference website (C90610 rather than C90601), were indeed prior art by reason of

having been offered for sale prior to the Application, and that he had determined for that reason

that he had no obligation to disclose the physical Merrick hangers (or images of those physical

hangers) to the examiner.  (Sonnabend Decl. ¶¶ 5-7.)

        There was a "sense of urgency" within the Plaintiff company in March 2011

about obtaining approval of the Application because Plaintiff was in the process of supplying a

customer with a product that was to be protected by the '300 Patent.  (O'Connor Decl. Ex. F.)

Plaintiff's representative testified that the customer had asked Plaintiff "if there was an actual

patent" only a week or two before it issued.  (Id.)  On March 21, 2011, after he had filed the

Amended Application, Sonnabend filed a petition to expedite examination of the Application,

apparently to facilitate legal action upon Plaintiff's claim that the Slimline Hanger infringed the

patent that the Plaintiff was seeking through the Application.  On March 23, 2011, the PTO

issued a Notice of Allowability stating in pertinent part that:

> Independent Claims 1 and 14 are allowable because the prior art fails to disclose
> two identical hangers, each having a cascade hook member and corresponding
> hole, nested together wherein when nested together a top surface of the cascade
> hook member of the second hanger is in contact with a bottom surface of the
> cascade hook member of the first hanger, a front surface of the first hanger and
> the rear surface of the second hanger are abutting against each other, and top and
> bottom portions of each hanger are in a common horizontal plane relative to one
> another.  Note that when the corresponding front and rear surfaces of the
> attachable hangers (product number C90601) of MERRICK (NPL document) are
> abutting one another, top and bottom surfaces of the cascade hook member are
> NOT abutting one another . . . .

(Id. Ex. A-12 at 2.)  The examiner's statement purporting to distinguish Plaintiff's hanger from

Merrick C90601 on the grounds that the top and bottom surfaces of the Merrick hanger do not

abut one another when nested is consistent with Plaintiff's proffer in its amendment that its

product's top and bottom cascading hook member surfaces do abut when nested,

"distinguish[ing] the claims from Arnold in view of Merrick."  (See O'Connor Decl., Ex. A-10,

at 8.)

On April 27, 2011, prior to the allowance of the '300 Patent, Defendants' counsel

sent Mr. Sonnabend a letter asserting that, contrary to the description of the Merrick C90601 in

the Notice of Allowability, the cascading hook members of Merrick's hangers do "abut and

engage the bottom surface of the other adjoining cascading hook member," (the "April 27

Letter").  Defendants' counsel noted that the "representation of record about the Merrick hanger

is inaccurate" and asserted that "applicant has an affirmative duty of candor and good faith in

dealing with the Patent Office . . . [, and] applicant should withdraw the [Application] from

issuance and disclose the misrepresentations . . . "  The April 27 Letter attached certain

high-resolution photographs of Merrick hangers that show abutting cascading hook members.

The photographs show the Merrick hangers with the product number C90610-A on the

packaging.  (Id. Ex. D.)  It is undisputed that the depicted Merrick hangers do actually feature

abutting cascade hook members.  Plaintiff did not, however, withdraw the Application or correct

the misapprehension of the PTO regarding the features of the Merrick hangers.

When questioned during his deposition as to why he did not submit the

high-resolution photographs to the PTO examiner, Mr. Sonnabend explained that he believed he

had no obligation to do so because the April 27 Letter did not specifically identify the

photographs as prior art.  (Id. Ex. B at 5-7.)  Mr. Doherty, a principal of the Plaintiff company,

testified that the only investigation the Plaintiff conducted into whether the Merrick hangers

were prior art was a call to the customer service line of Merrick; he did not disclose what, if any,

information Plaintiff received during that call.  (Id. Ex A-1)  The '300 Patent issued on May 10,

2011, without further comment from Mr. Sonnabend to the PTO examiner.  (Id. Ex. A-1.)

Defendants have offered the Report of William Poms, Esq., a former PTO

examiner, as evidence regarding the adequacy of the disclosures and the materiality of the

various references available during the prosecution of the '300 Patent.  Mr. Poms opines, inter

alia, that Mr. Sonnabend's conduct was deceptive with regard to his disclosures to the PTO.  In

his report, Mr. Poms offers the following opinion as to the likely content and impact of Mr.

Sonnabend's October 5, 2010, telephone interview with the PTO examiner:

> Aside from being persuaded by plaintiff's attorney, Mr. Sonnabend, during the
> telephone interview, the only reason for the Examiner to change his position from
> his final rejection was based on what was disclosed or shown or not shown in the
> [Merrick Reference].  These thumbnail images of the Merrick hangers were not
> high resolution pictures and it was difficult from those pictures to determine
> whether cascade hook members of the Merrick hangers were or were not in
> contact with each other when the hangers were placed next to each other in their
> packaging, or nested configuration, but there was a strong inference that they

were.

(Poms Report at 14-15.)  Mr. Poms opines that, at the time of the interview, "Sonnabend knew that Patent Examiner had reached an erroneous and completely wrong understanding of the structure of the thumbnail images of the Merrick hangers shown on the Merrick webpages" because Mr. Sonnabend was in possession of the actual Merrick hangers which had cascade hook members that abutted while in nested formation.  (Id.)  Mr. Poms concluded with respect to the interview, based on his extensive experience as a PTO examiner and patent prosecutor, that "the only way the examiner could have reached the conclusion that the hooks shown in the image were not in contact with each other was if the plaintiff's attorney told him, during their oral conversation, that the hooks were not touching."  (Id. at 17.)

Mr. Poms further opines, based on his review of the prosecution history of the '300 Patent, that the '300 Patent "would not have issued as a patent if plaintiff and particularly its lawyer, Mr. Sonnabend, had provided the Patent Examiner, prior to May 10, 2011 . . . with the physical Merrick hangers and the detailed pictures of the Merrick hangers that were in their possession."  (Id. at 20.)  Mr. Poms also asserts that, "Plaintiff, and particularly, its lawyer, Mr. Sonnabend, deliberately and willfully and in violation of the law and the Patent Office rules, withheld more detailed and pertinent prior art than the Patent Examiner had in his possession when he issued the '300 patent on May 10, 2011," despite Plaintiff's and Mr. Sonnabend's duties of "disclosure to the Patent Examiner."  (Id.)

Plaintiff contends that, since it and Mr. Sonnabend were unaware that either the physical Merrick hangers or the photographs of the Merrick hangers accompanying the April 27 Letter were prior art, they were under no duty to disclose these materials to the PTO examiner nor to correct the statement of the PTO examiner in the Notice of Allowability.  Mr. Sonnabend

specifically asserts that, because he believed the Merrick Reference and the photographs

contained in the April 27 Letter were references separate and apart from the Merrick Reference,

he believed he was under no duty to disclose this information to the examiner.  (Sonnabend Decl.

¶¶ 5-7.)

<u>Discussion</u>

<u>Motion in Limine to Preclude Testimony of William Poms</u>

Because the outcome of the motion to preclude might affect Defendants' ability

to prevail on their summary judgment motion, it is appropriate to consider the motion to

preclude prior to the parties' cross-motions for summary judgment.  <u>Briese Lichttechnik</u>

<u>Vertriebs GmbH v. Langton</u>, 09CV9790-LTS-MHD, 2012 WL 3105083, at *2 (S.D.N.Y. July

31, 2012).  Plaintiff moves to strike Mr. Poms' Report and preclude his testimony, arguing that it

is not properly admissible under Federal Rule of Evidence 702 in that it inaccurately informs the

Court of the law and usurps the court's and jury's roles in determining the law and facts of this

case.

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training,
or education may testify in the form of an opinion or otherwise if: (a) the expert's
scientific, technical, or other specialized knowledge will help the trier of fact to
understand the evidence or to determine a fact in issue; (b) the testimony is based
on sufficient facts or data; (c) the testimony is the product of reliable principles
and methods; and (d) the expert has reliably applied the principles and methods to
the facts of the case.

Fed. R. Evid. 702.  Additionally, "[a]n opinion is not objectionable just because it embraces an

ultimate issue" of the case.  Fed. R. Evid. 704.

In patent cases, judges often rely on experts to determine the "disclosures of a

patent, the operation of allegedly infringing devices, and the teachings of prior art."  <u>N. V.</u>

<u>Maatschappij Voor Industriele Waarden v. A. O. Smith Corp.</u>, 590 F.2d 415, 419 (2d Cir. 1978).

"As in other fields where expert testimony is of vital significance, the opinions of patent experts

must often be formulated in conclusory terms that make reference to legal concepts or touch on

central issues in the case."  <u>Id.</u>  Experts may also testify on mixed questions of law and fact.  <u>In</u>

<u>re Initial Pub. Offering Sec. Litig.</u>, 174 F. Supp. 2d 61, 65 (S.D.N.Y. 2001) (citing <u>In re Air</u>

<u>Disaster at Lockerbie, Scotland</u>, 37 F.3d 804, 826-27 (2d Cir. 1994)).

Mr. Poms' testimony with regard to the propriety of the Plaintiff's conduct before

the patent office and the materiality of the omitted information to the PTO examiner's decision is

properly admissible.  Mr. Poms is qualified as an expert in the patent prosecution process,

having served as both a PTO examiner and a prosecuting attorney.  He has based his opinions on

the factual record before the Court, and has reliably applied his knowledge of the facts and the

law.  His opinions are relevant to the adequacy of Plaintiff's disclosures to the PTO examiner,

which is a question of mixed law and fact.

Furthermore, Mr. Poms has cited, accurately, relevant principles of law.  For

example, Mr. Poms recites the controlling <u>Therasense</u> standard for the doctrine of inequitable

conduct and notes that he is basing his opinion on that standard and the relevant facts.  (Poms

Report at 12-13.)  Mr. Poms also cites the well-known principle, reiterated in <u>Rohm & Haas</u>

<u>Company v. Crystal Chemical Company</u>, that intent "may be proven by a showing of acts the

natural consequences of which are presumably intended by the actor."  722 F.2d 1556, 1571

(Fed. Cir. 1983) (quoting <u>Kansas Jack, Inc. v. Kuhn</u>, 719 F.2d 1144 at 1151 (Fed. Cir.1983))

(internal quotation marks omitted).  Plaintiff's assertion that <u>Therasense</u> abrogated <u>Rohm</u> on this

rule of law is unsupported.

Although Mr. Poms was clearly as mistaken as the parties and the Court in

characterizing the physical hangers provided to Mr. Sonnabend by Defendants' counsel as the same models as those depicted in the brochure Merrick Reference, and it is not clear that the physical hangers possessed by Mr. Sonnabend themselves constituted a prior reference, Mr. Poms' affidavit provides relevant information, properly supported, as to practices of the PTO and the examination process, and insight into the likely nature of the interaction between Mr. Sonnabend and the examiner.  The Court may properly consider the Poms affidavit, giving it appropriate weight, in its determination of the instant summary judgment motions.

Plaintiff's motion to strike the Poms Report and preclude Mr. Poms' testimony is therefore denied.

The Parties' Cross-Motions for Summary Judgment

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact).  A fact is considered material if "it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson, 477 U.S. at 248).  The Second Circuit has explained, however, that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation."  DeFabio v. East Hampton Union Free School Dist., 623 F.3d 71, 81 (2d Cir. 2010).  Rather, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  Duch v. Jakubek, 588 F.3d

757, 764 n.2 (2d Cir. 2009); see also Fed. R. Civ. P. 56(e).  When deciding cross-motions for

summary judgment, the standard to be used "is the same as that for individual summary

judgment motions and a court must consider each motion independent of the other."  Schultz v.

Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (internal citations and quotation marks

omitted).  The Court applies these principles in reconsidering and resolving the cross-motions

for summary judgment.

Inequitable Conduct

"[I]nequitable conduct regarding any single claim render[s] the entire patent

unenforceable."  Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1288 (Fed. Cir.

2011).  In Therasense, the Federal Circuit clarified and heightened the standard for invalidation

of patents based on inequitable conduct on the part of a prosecuting attorney.  It held that, where

the withholding of a reference is the basis of an inequitable conduct challenge, a defendant must

prove by "clear and convincing evidence" that the applicant "knew of the reference, knew it was

material, and made a deliberate decision to withhold it."  Therasense, Inc. v. Becton, Dickinson

& Co., 649 F. 3d 1276, 1290 (Fed. Cir. 2011) (en banc).  "[I]ntent and materiality are separate

requirements."  Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1334 (Fed. Cir. 2012)

(quoting Therasense, 649 F. 3d at 1290) (quotation marks omitted).  "[A] district court may not

infer intent solely from materiality.  Instead, a court must weigh the evidence of intent to deceive

independent of its analysis of materiality."  Id. at 1290.  "Because direct evidence of deceptive

intent is rare, a district court may infer intent from indirect and circumstantial evidence."  Id.

(citation omitted).  "However, to meet the clear and convincing evidence standard, the specific

intent to deceive must be 'the single most reasonable inference able to be drawn from the

evidence.'"  Id. (citation omitted).  The burden of coming forward with clear and convincing

evidence of deceitful intent is on the party alleging inequitable conduct: "the 'patentee need not

offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level

of intent to deceive by clear and convincing evidence.'"  Id. at 1291 (citation omitted).  Here,

Plaintiff asserts that it is entitled to summary judgment on the issue of inequitable conduct

because Defendant has failed to come forward with the requisite clear and convincing evidence

and, furthermore, alleges that Plaintiff's decision not to disclose information concerning the

physical hangers was made in good faith.

   Patent prosecution is an ex parte process and, consequently, "[p]ublic interest

demands that all facts relevant to such matters be submitted formally or informally to the Patent

Office, which can then pass upon the sufficiency of the evidence.  Only in this way can that

agency act to safeguard the public in the first instance against fraudulent patent monopolies."

Gen. Elec. Co. v. Mitsubishi Heavy Indus. Ltd., 10CV276-F, 2013 WL 2338345 (N.D. Tex. May

28, 2013) (quoting Precision Instrument Mfg. Co. v. Auto. Maintenance Mack Co., 324 U.S. 806

(1945)).  The Supreme Court has adopted the reasoning of the PTO that "the nature of an

application for patent, [and] the relationship of attorneys to the Patent Office requires the highest

degree of candor and good faith.  In its relation to applicants, the [PTO examiner] must rely upon

their integrity and deal with them in a spirit of trust and confidence."  Kingsland v. Dorsey, 338

U.S. 318, 319 (1950) (quoting statement made by the Patent Office Committee on Enrollment

and Disbarment) (ellipses and internal quotation marks omitted).  This duty of candor is codified

in 37 C.F.R. § 1.56(a) as follows:

   Each individual associated with the filing and prosecution of a patent application
   has a duty of candor and good faith in dealing with the [PTO examiner], which
   includes a duty to disclose to the [PTO examiner] all information known to that
   individual to be material to patentability . . . .

A "[v]iolation of the duty of candor constitutes inequitable conduct."  <u>Avocent Redmond Corp.</u>

<u>v. Raritan Americas, Inc.</u>, 921 F. Supp. 2d 229 (S.D.N.Y. 2013).

<u>Materiality</u>

Under <u>Therasense</u>, the materiality required to establish inequitable conduct in the

prosecution of a patent is but-for materiality – a defendant must show by a preponderance of the

evidence that the PTO examiner would not have allowed the claim but for the non-disclosure or

misrepresentation – and the Plaintiff or its attorney must have known that the reference was

material.  649 F. 3d at 1292, 1295.  The defendant must prove that the patentee had a "specific

awareness of materiality;" general knowledge or negligence in not recognizing the materiality of

the misrepresentation or omission will not suffice.  <u>Therasense</u>, 694 F.3d at 1375.

The materiality of the Merrick Reference cannot genuinely be disputed.  Although

Mr. Sonnabend claims that he originally revealed the brochure Merrick Reference out of an

abundance of caution, unsure of whether it predated the Application, the PTO's confirmation of

its pre-Application date, and the citation of the Merrick Reference in the PTO's original rejection

of the Application, left no room for doubt as to the materiality of that brochure reference.

Equally clear is the materiality of the PTO's interpretation of the brochure Merrick Reference as

a depiction of a hanger constituting prior art in relation to the Application.  Information forming

the basis of the PTO's understanding of the physical relationships of the Merrick hangers in their

nested configuration is shown in the record, by clear and convincing evidence, to be but-for

material to the PTO's decision to grant the '300 Patent.  Mr. Poms' expert affidavit provides

further confirmation of the centrality of the examiner's understanding of the attachment feature

of the hanger product to the decision to issue the patent.

Intent to Deceive the PTO Examiner

Equally clear and convincing is the record evidence that Mr. Sonnabend had, and provided to the PTO examiner, information regarding those physical relationships.  The examiner rejected the Application, citing Merrick specifically as prior art vitiating several of Plaintiff's claims.  Shortly thereafter, Mr. Sonnabend spoke with the examiner on the telephone, and that same day submitted an amended application purporting to distinguish the Plaintiff's hanger from Merrick, representing that the Merrick hangers did not abut top-and-bottom when in a nested configuration but that Plaintiff's did.  There is nothing in the prosecution history indicating that the examiner had obtained any independent information regarding the properties of the physical Merrick hangers.  By contrast, Mr. Sonnabend admits that he had physical Merrick hangers at the time.  He claims to have forgotten what transpired in the telephone conversation.  He is certain, however, that he never shared accurate information regarding the Merrick hangers and photographs provided to him by the Defendants with the examiner.  The only reasonable interpretation of the circumstantial evidence concerning the October 12, 2010, conversation with the examiner is that Mr. Sonnabend misrepresented to the examiner the physical properties of the actual Merrick hangers in his possession – specifically, that he told the examiner or deliberately let the examiner believe that the tops and bottoms of the Merrick cascade hooks did not abut in the nested configuration.  Such intentional deception of the examiner is grounds for invalidation of the '300 patent.

Proof of inequitable conduct requires clear and convincing evidence of a specific intent to deceive the PTO examiner.  Therasense, 649 F.3d at 1290.  To satisfy the intent element, the accused infringer must demonstrate that the specific intent to deceive is "the single most reasonable inference able to be drawn from the evidence."  Therasense, 649 F. 3d at 1297

(quoting Star Scientific Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir.2008))
(internal quotation marks omitted).  "'Because direct evidence of deceptive intent is rare, a
district court may infer intent from indirect and circumstantial evidence' on a motion for
summary judgment or after a trial."  Jersey Asparagus Farms, Inc. v. Rutgers Univ., 803 F. Supp.
2d 295, 312 (D.N.J. 2011) (quoting Therasense, 649 F. 3d at 1290).  Selectively withholding
material information is indicative of an intent to deceive for the purposes of inequitable conduct.
Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d 1324, 1335 (Fed. Cir. 2012).

       The Court finds that the only reasonable inference to be drawn from the
undisputed facts is that Mr. Sonnabend intended to deceive the PTO examiner about a reference
he knew was material and that he in fact did so.  It is undisputed that Mr. Sonnabend had a
telephone interview with the PTO examiner, after which he filed the Amended Application
which distinguished the Application from the Merrick Reference on the basis of non-abutment of
the cascade hooks of the hangers portrayed in the Merrick Reference.  It is also apparent that the
top and bottom surfaces of the cascade hook members of the Merrick hangers do in fact abut
when nested, and that Mr. Sonnabend had Merrick hangers in his possession at the time he spoke
to the PTO examiner.  Logic dictates the conclusion that Mr. Sonnabend misrepresented the
cascade hook feature of the Merrick hangers to the PTO examiner in the telephone conversation,
rendering the examiner receptive to the Amended Application, which draws a false distinction
between Plaintiff's hangers and the Merrick Reference.[3]

       Plaintiff offers no evidence to controvert Mr. Poms' conclusion that "the only

---

[3]     In the Amended Application, Mr. Sonnabend wrote that Claims 1 and 14 of the
Application have been amended to include abutting cascading hook members in
order to "distinguish[] the claims from Arnold in view of Merrick."

way the examiner could have reached the conclusion, which is consistent with the foregoing analysis, that the hooks shown in the image were not in contact with each other was if the plaintiff's attorney [Mr. Sonnabend] told him, during their oral conversation, that the hooks were not touching."  Rather, when given the opportunity, Mr. Sonnabend testified only that he had no memory of any of the details discussed during the interview.

Mr. Sonnabend's continued pattern of disingenuous behavior, even after filing the Amended Application, strengthens the inference of his intent to deceive the PTO examiner.  Mr. Sonnabend proffers that he originally disclosed the low-resolution Merrick Reference out of "an abundance of caution" even though he did not know whether it was prior art.  Even after the PTO examiner had determined that the Merrick Reference constituted prior art, and Mr. Sonnabend had led the examiner to an incorrect conclusion about the Merrick hangers and amended the Application to turn on that incorrect conclusion, Mr. Sonnabend did not disclose either the physical Merrick hangers or the high-resolution photographs of the C90610 Merrick hangers (both far clearer demonstrations of how the hanger worked than the thumbnail images in the Merrick Reference) after Defendants' counsel provided them to him.  Mr. Sonnabend now claims that he did not do so because he did not know that they themselves were prior art.  Mr. Sonnabend selectively withheld from the PTO examiner the most relevant information concerning the physical attributes of the hanger product depicted in the reference that Mr. Sonnabend provided to the PTO examiner, which is indicative of a clear intent to deceive.  See Aventis Pharma S.A. v. Hospira, Inc., 675 F.3d at 1335 (court found inequitable conduct based on "affirmative conduct by the applicants showing not only specific awareness of materiality, but careful and selective manipulation of where, when, and how much of the most material information to disclose").  His sophistry concerning the logic underlying his behavior is

insufficient, in light of the compelling circumstantial evidence that he provided false information to the examiner, to frame a genuine issue of material fact regarding his intent to deceive the examiner.

Mr. Sonnabend's contention that he could properly withhold, on grounds of uncertainty as to prior art status, physical evidence of critical features of hangers similar if not identical to those depicted in his disclosed prior art reference, while misleading the examiner as to the nature of those features in order to obtain a patent, is wholly incredible and indicates inequitable conduct at its worst.  Plaintiff's argument that it could properly withhold the physical embodiments of referenced prior art is baseless.  In <u>American Calcar, Inc., v. American Honda Motor Co.,</u> the Federal Circuit upheld a determination that a similar strategy rendered a patent invalid due to inequitable conduct, finding that an inventor's disclosure of the prior art in the form of a manual for a navigation system – which system the inventor had used while developing the device that he sought to patent – but failure to disclose the operational details of the actual navigation system including photographs of the navigation system itself, indicated a specific intent to deceive under <u>Therasense</u>. 768 F.3d 1185, 1191 (Fed. Cir. 2014).  Here, Mr. Sonnabend prosecuted the patent in much the same way, offering the low-resolution photographs wherein the abutting cascade hooks are not visible, but failing to disclose either the physical Merrick Hangers or higher resolution photographs, in order to lead the PTO examiner into allowing his Claims 1 and 14 based on the false representation that the hangers depicted in the Merrick Reference did not have abutting cascading hooks.

Accordingly, there is no genuine dispute of material fact.  Defendants have, furthermore, carried their burden of demonstrating by clear and convincing evidence that Plaintiff deliberately misled the PTO as to the key structural feature of the hangers depicted in

the Merrick Reference and withheld photographs and physical evidence that would have precluded the issuance of the '300 Patent.  Defendants have thus proven but-for materiality of the reference and of Mr. Sonnabend's misrepresentations and withholding of crucial information concerning Merrick's attachable hanger products.  The undisputed evidence of record is also sufficient to require the conclusion that Plaintiff specifically intended to deceive the PTO examiner as to the key structural feature of the hangers depicted in the Merrick Reference.  Mr. Sonnabend's proffer as to his belief that he had no legal obligation to disclose the physical hangers and the high-resolution photographs does not raise any triable issue of fact as to his intent to deceive the PTO as to a material matter, and the impact of that deception on the issuance of the '300 Patent.

Defendants are, accordingly, entitled as a matter of law to judgment declaring the '300 Patent invalid as procured through inequitable conduct, and Plaintiff's cross-motion for summary judgment must be denied.  In light of the invalidation of the '300 Patent, Plaintiff's infringement claims must be dismissed.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is granted and, upon reconsideration, Defendants' motion for summary judgment of non-infringement is granted and the '300 patent is declared invalid and unenforceable as the product of inequitable conduct. Plaintiff's claims of infringement are dismissed.  Plaintiff's motions for summary judgment and to strike the testimony of William Poms are denied in their entirety.  This Memorandum Opinion and Order resolves docket entry no. 232, nunc pro tunc to September 30, 2013, and supersedes docket entry no. 225.

Plaintiff's opposition to Defendants' application for attorneys' fees must be filed within 14 days after entry of this Memorandum Opinion and Order.  (See docket entry nos. 235 and 241.)

SO ORDERED.

Dated: New York, New York
          February 11, 2015

<u>    /s/ Laura Taylor Swain    </u>
LAURA TAYLOR SWAIN
United States District Judge