UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WORLDWIDE HOME PRODUCTS, INC.,

        Plaintiff,

      -v-                         No.  11CV3633-LTS-MHD

BED, BATH AND BEYOND, INC., <u>et al.</u>,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Worldwide Home Products, Inc. ("Plaintiff") sought, in this litigation, to enforce its '300 patent.  The Court has granted summary judgment in favor of Defendants Bed, Bath & Beyond, Inc., and Cohesion Products, Inc. ("Defendants"), invalidating the '300 Patent for inequitable conduct, finding non-infringement and dismissing Plaintiff's claims.  Defendants now bring this motion seeking, pursuant to 35 U.S.C. section 285 and the Court's inherent power, to recover from Plaintiff $875,415.15 in attorneys' fees and related expenses that Defendants incurred while defending this lawsuit.  Defendants also assert that Plaintiff's former attorney, Jeffrey Sonnabend, Esq., should held jointly and severally liable for the award pursuant to 28 U.S.C. section 1927.  Plaintiff and Mr. Sonnabend each have opposed the motion.

        The Court has thoroughly reviewed all of the submissions in connection with this motion.  This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52(a) and 54(d)(2)(C).  For the following reasons, the Court grants, in part, Defendants' motion for attorneys' fees and related expenses.  The Court finds that this is an exceptional case pursuant to 35 U.S.C. section

285 and that the fees and costs incurred are reasonable, but that expert witness fees are not available under section 285, and that an award of expert witness fees in the nature of sanctions is not warranted as against Plaintiff.  The Court further holds Mr. Sonnabend liable jointly and severally, pursuant to 28 U.S.C. section 1927, for the reasonable attorneys' fees and related expenses awarded to Defendants.

The '300 Patent is directed to a clothing hanger having an abutment feature with a "supporting means in the form of a cascade hook for supporting additional hangers therefrom." ('300 Patent at 1:52-54).  In an order entered on September 30, 2013 (the "September Order"), the Court granted summary judgment in Defendants' favor, finding that the uncontroverted factual record established that Plaintiff had engaged in inequitable conduct to procure the '300 Patent in that, during the prosecution of the patent, Plaintiff's counsel, Jeffrey Sonnabend, Esq., knowingly provided false information to the United States Patent and Trademark Office ("PTO") examiner concerning hangers that constituted prior art.  The Court reaffirmed this finding of misconduct in an amended order, docket entry number 256 (the "Amended Order"), wherein the Court granted Plaintiff's request for reconsideration of the September Order, and reaffirmed the summary judgment and the declaration that Plaintiff's patent is unenforceable as a product of inequitable conduct.  The Court found, inter alia, that the undisputed evidence of record required the conclusion that Plaintiff specifically intended to deceive the PTO in the patent prosecution process and that Defendants proved the "but-for materiality of the [key] reference and of Mr. Sonnabend's misrepresentations and withholding of crucial information concerning [another manufacturer's] attachable hanger products."  (Amended Order at 22.)

35 U.S.C. section 285 authorizes the court to award attorneys' fees to the prevailing party in "exceptional" patent cases.  The decision to award attorneys' fees involves a

two-step analysis.  First, the district court must determine whether the case is exceptional.

Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992).  "[A]n

'exceptional' case is simply one that stands out from others with respect to the substantive

strength of a party's litigating position (considering both the governing law and the facts of the

case) or the unreasonable manner in which the case was litigated.  District courts may determine

whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the

totality of the circumstances."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct.

1749, 1756 (2014).  In its Octane Fitness decision, the Supreme Court rejected a "rigid" standard

of exceptionalness under which courts had required a showing of "litigation-related misconduct

of an independently sanctionable magnitude or . . . that the litigation was both 'brought in

subjective bad faith' and 'objectively baseless.'"  Id., at 1756.  Instead, a district court should

consider nonexclusive factors including "frivolousness, motivation, objective unreasonableness

(both in the factual and in the legal components of the case) and the need in particular

circumstances to advance considerations of compensation and deterrence."  Fogerty v. Fantasy,

Inc., 510 U.S. 517, 535 (1994); see Octane Fitness, 134 S. Ct. at 1756.

　　　　"[P]revailing on a claim of inequitable conduct often makes a case 'exceptional,'

leading potentially to an award of attorney fees under 35 U.S.C. § 285."  Therasense, Inc., v.

Becton, Dickinson & Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011) (citing Brasseler, U.S.A.I, L.P.

v. Stryker Sales Corp., 267 F.3d 1370, 1380 (Fed. Cir. 2010)).  In Brasseler, the Federal Circuit

affirmed the grant of summary judgment for inequitable conduct against a patentee whose

attorney purposefully had withheld information known to be material from the Patent and

Trademark Office.  267 F.3d at 1385.  The Circuit further affirmed the district court's finding

that the case was exceptional under section 285, and that the patentee was liable for the

defendant's reasonable fees.  Id.

Here, as in Brasseler, the Court has found on summary judgment that there was no genuine dispute of material fact as to inequitable conduct.  Mr. Sonnabend engaged in a pattern of inequitable conduct by willfully misrepresenting and selectively withholding information from the PTO examiner that he understood to be material.  Mr. Sonnabend then prosecuted the instant case on behalf of Plaintiff, alleging infringement of the wrongfully-procured patent.  Consequently, this is an exceptional case for purposes of a fee award under 35 U.S.C. section 285.

Notwithstanding Plaintiff's argument that it was acting solely on the advice of Mr. Sonnabend and therefore should not be held liable for Defendants' fees and expenses, parties are responsible for the actions of their attorneys in a litigation and Plaintiff is properly held liable under section 285 in this exceptional case.  See, e.g., Brasseler, 267 F.3d at 1385 (holding plaintiff liable under section 285 for attorneys' litigation conduct).  Having considered the relevant factors, the Court finds that this case involves precisely the type of litigation conduct – frivolous claims motivated by unbridled desire to gain an improper patent monopoly windfall – that should be deterred by courts through the shifting of fees.

Once the court determines that a party is entitled to an award of attorneys' fees, it then must decide whether the requested attorneys' fee award is reasonable by calculating the "lodestar," which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Lumen View Tech, LLC v. Findthebest.com, Inc., No. 13CV3599, 2014 WL 5389215, at *2 (S.D.N.Y. October 23, 2014) (citing Healy v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007)).  "The Federal Circuit has emphasized that a reasonable attorney fee is 'a determination that lies primarily within the discretion of the district court,' which may 'consider

all the relevant circumstances in a particular case.'" Takeda Chem. Indus. v. Mylan Labs., Inc.,

No. 03CV8253, 2007 WL 840368, at *3 (S.D.N.Y. Mar. 21, 2007), aff'd, 549 F.3d 1381 (Fed.

Cir. 2008) (quoting Junker v. Eddings, 396 F.3d 1359, 1365–66 (Fed. Cir. 2005)).  In patent

infringement cases, the district court may also consider the American Intellectual Property Law

Association ("AIPLA") surveys of typical litigation costs.  See, e.g., Takeda Chem. Indust., 2007

WL 840368, at *3 (citing Mathis v. Spears, 857 F.2d 749, 755 (Fed. Cir. 1988)).

    Defendants request an award in the amount of $875,472.15, comprised of

$739,743.09 in attorneys' fees and $135,729.06 in costs.  (See O'Connor Decl. at ¶ 3.)  The

AIPLA 2011 survey concluded that the average fees and costs for patent litigation through

discovery, but not including pre-trial or trial, is $1.6 million, where the amount in controversy

was between $1 million and $25 million.  The amount in controversy in this patent infringement

matter is in excess of one million dollars.  Accordingly, the AIPLA data indicate that

Defendants' total requested award, $875,472.15 – roughly half the average $1.6 million typically

incurred through discovery in comparable cases – is objectively reasonable.

    Having reviewed Defendants' attorneys' time records and billing rates, the Court

finds that the lodestar computation properly includes all of the time billed and results in a

reasonable and appropriate fee award.  The billing rates for Defendants' attorneys are modest in

comparison to those often charged in litigation in this District by attorneys with comparable

experience.  The highest hourly rate billed was $550 for Edward F. O'Connor, Esq., lead counsel

with over forty years of experience.  The remainder of the attorneys utilized by defense counsel

billed between $300 to $400 per hour for counsel with over ten years' experience each, and $165

per hour for an associate with five years' experience.  The Court finds that these rates are

reasonable in light of the attorneys' respective levels of experience.  See TigerCandy Arts, Inc.

v. Blairson Corp., No. 09CV6215, 2012 WL 760168, at *9 (S.D.N.Y. Feb. 23, 2012) (finding

that $500 was a reasonable hourly rate for partner who "has been practicing law for twenty-eight

years, specializes in intellectual property law, and has been recognized as a skilled intellectual

property attorney by several organizations."); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.,

No. 09CV8665 2010 WL 5538552, at *3 (S.D.N.Y. Dec. 6, 2010) (finding that $657 per hour "is

well within the range of rates for law firm partners in the New York City area with significant

intellectual property law experience" and approving associate hourly rates of $395 to $435).

Defendants' primary counsel in this action were based outside of New York City, and appear to

have billed at their local rates rather than New York City rates.

       The time expended and costs incurred by defense counsel here are also reasonable

in light of the circumstances.  The majority of the hours for which defense counsel billed are for

the services of Uleses C. Henderson Jr., Esq.  Mr. Henderson is a senior counsel and has over ten

years of intellectual property law experience.  His hourly rate is $315, and is modest compared

with those of attorneys in the New York City area with comparable experience.  See OZ Mgmt.

LP, 2010 WL 5538552, at *3 (approving $395 to $435 associate rates in the New York City

area).  Defendants also seek recovery for Mr. O'Connor's time in a supervisory attorney role for

reviewing pleadings and attending conferences, and the Court finds that these supervisory time

expenditures were reasonable.  The Court has reviewed all of the objections to particular tasks

and time entries billed, and finds that the requested fees are in each case reasonable.

       Moreover, Defendants proffer that they "have in fact paid for all [requested

attorneys' fees] through August 30, 2013."  (Docket entry no. 238, at 18.)  The fact that

Defendants, which are sophisticated business entities, have paid the fees in full pursuant to the

fee arraignment with counsel is indicative of the reasonableness of the fees.  See Crescent Publ'g

Grp., Inc. v. Playboy Enterprises, Inc., 246 F.3d 142, 151 (2d Cir. 2001) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'").

Plaintiff and Mr. Sonnabend each object to Defendants' request for reimbursement of $21,500 related to flat fee arrangements for opposing Plaintiff's motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment and for prosecuting Defendants' instant motion to recover from Plaintiff attorneys' fees and related expenses. The Court has observed the extensive work expended by Defendants' counsel while litigating these motions, and finds that the time corresponding to these flat rate amounts is reasonable in relation to the work reflected in the submissions to the Court. See, e.g., Watson v. E.S. Sutton, Inc., No. 02CV02739, 2006 WL 6570643, at *12 (S.D.N.Y. Aug. 11, 2006), report and recommendation adopted as modified, No. 02 CV 2739, 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007) ("[A]lthough flat fees are usually disfavored, courts in this district have awarded attorneys fees in fee-shifting contexts where billing was done on a flat-fee basis, as long as the supporting documentation allowed the court to assess who performed the task, the nature of the task performed, and when the task was completed."). The Court further notes that Defendants' counsel proffers that the arrangement was designed to reduce the cost to Defendants of this frivolous case. This proffer is indicative of the reasonableness of the fees. The Court has reviewed the staffing as reflected on the submissions and, in light of the attorneys' billing rates as reflected in the other submissions and the magnitude of the work, finds the flat fees reasonable.

Plaintiff objects to Defendants' expert witness fee request – specifically to $32,847.50 in fees for financial/damage expert witness David Notle and $24,500 in fees for

William Poms.  Section 285 does not authorize an award of expert fees.  Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 379 (Fed. Cir. 1994).  Such expenses may, however, be awarded as sanctions pursuant to the inherent powers of the court.  The courts' "authority to impose sanctions is grounded, first and foremost, in our inherent power to control the proceedings that take place before [the] Court."  Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991)).  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Id. (quoting NASCO, 501 U.S. at 43-44).  District courts, therefore, may sanction any party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Id. (quoting NASCO, 501 U.S. at 43-44).

Nonetheless, "[t]he rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions," and the court therefore must "specify conduct of the client [itself] that is bad enough to subject [it] to sanctions."  Id. (quoting Gallop v. Cheney, 660 F.3d 580, 584 (2d Cir. 2011)).  Here, the record with respect to Plaintiff's specific knowledge of Mr. Sonnabend's misconduct is insufficient to demonstrate that Plaintiff itself acted in bad faith.  The Court will not impose the requested sanction on Plaintiff.[1]

Plaintiff further objects to Defendants' additional requested litigation expenses, including costs of travel and delivery services.  The Court has reviewed these costs in detail and, in light of the hotly contested litigation, including multiple motions for summary judgment and an extensive Markman hearing, and the need to supply hard courtesy copies of electronic filings

---

[1] Plaintiff also raises issues with certain purported irregularities in the bills of the experts.  The Court need not address the merits of those claims in light of its decision to deny this aspect of Defendants' request.

to the Court, finds these costs to be reasonable and thus compensable under section 285 in this exceptional case.

Defendants are therefore awarded a total of $818,124.65 ($739,743.09 in attorneys' fees and $78,381.56 in nontaxable expenses) in respect of their reasonable attorneys' fees and expenses incurred in defending this litigation, pursuant to 35 U.S.C. section 285.

The Court now turns to Defendants' request for an award against Plaintiff's former counsel, Mr. Sonnabend.  Under 28 U.S.C. section 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the [C]ourt to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  To impose a fee award pursuant to section 1927, "'a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay.'"  Wynder v. McMahon, 565 F. App'x 11, 13 (2d Cir. 2014) (quoting Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000)).  "[A] claim is entirely without color when it lacks any legal or factual basis."  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999) (internal quotation marks omitted).  "'[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.'"  Warhol, 194 F.3d at 338 (quoting Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 38 (2d Cir. 1995)).  Bad faith may be inferred, but "only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  Warhol, 194 F.3d at 336.

It is now clear that the infringement claims that Mr. Sonnabend prosecuted on Plaintiff's behalf were baseless from the start, in that they were premised on alleged violations of rights in a patent that Mr. Sonnabend had knowingly obtained through intentional inequitable

conduct.  Mr. Sonnabend knew that he had made material misstatements or omissions in procuring the patent before he ever filed the Complaint, and he therefore understood that the infringement claims had no proper foundation.[2]

Mr. Sonnabend's participation in bringing this action thus was also in bad faith. In the Amended Order, the Court found that "[t]he only reasonable interpretation of the circumstantial evidence concerning [Mr. Sonnabend's] October 12, 2010, conversation with the examiner is that Mr. Sonnabend misrepresented to the [PTO] examiner the physical properties of the actual Merrick hangers in his possession – specifically, that he told the examiner or deliberately let the examiner believe that the tops and bottoms of the Merrick cascade hooks did not abut in the nested configuration.  Such intentional deception of the examiner is grounds for invalidation of the '300 patent."  (Amended Order at 17.)  Mr. Sonnabend prosecuted this litigation very aggressively and ignored numerous opportunities to withdraw Plaintiff's claims. His conduct was vexatious and in bad faith and is a proper predicate for the imposition of sanctions pursuant to 28 U.S.C. section 1927.  Mr. Sonnabend's conduct during this litigation was intended solely to maximize the commercial value of a patent that he himself had procured through knowing and deliberate inequitable conduct.  He is therefore sanctioned pursuant to 28 U.S.C. section 1927 and held jointly and severally liable for the $818,124.65 in reasonable

---

[2]     Notwithstanding Mr. Sonnabend's contention that "[t]his Court's September 30, 2014 Decision on Defendants' [Federal Rule of Civil Procedure] 11 motion seeking sanctions . . . confirms that Plaintiff's claims were colorable and brought in good faith" (docket entry no. 291), that decision (docket entry 255) carries no such import. Despite the fact that it was entered after Defendants' inequitable conduct motion was filed, Defendants' claims of inequitable conduct were not raised in the Rule 11 motion practice.  Rather, Defendants had argued that Plaintiff's pleading with respect to allegedly infringing conduct of two additional parties was frivolous.  The Court addressed only the arguments that had been raised in that Rule 11 motion practice.

attorneys' fees and expenses awarded to Defendants.[3]

   In connection with this motion practice, the Court ordered Defendants "to show cause . . . as to why the . . . exhibits [to the O'Connor Declaration in support of the motion for attorneys' fees (docket entry no. 236)] should not be filed on the public ECF system in light of the First Amendment and common law rights of access to judicial documents." (Docket entry no. 266.) Defendants responded to this order on March 3, 2015, and Plaintiff opposed Defendants' response on March 4, 2015. (Docket entry nos. 271-72.) Defendants have not overcome the strong presumption of public access to court documents, except insofar as the documentation reflects sensitive personal or financial information and confidential third party pricing information. Defendants' proffers with respect to their counsel's confidential billing practices are insufficient to meet their burden. Attorneys understand that they may be required to disclose their fee statements, including the fee arrangements they have entered into with clients, particularly when they invoke fee-shifting statutes and doctrines under which the reasonableness of their fees is a material issue for adjudication. Defendants will be directed to file the O'Connor Declaration's exhibits on the public ECF system, appropriately redacted to protect confidential third-party pricing information. Personal identifiers and financial account information including credit card information, bank account numbers, and tax ID numbers must be redacted in accordance with Federal Rule of Civil Procedure 5.2. The full versions previously submitted will be filed under seal.

---

[3] In his papers in opposition to Defendants' motion, Mr. Sonnabend requested an opportunity to make an in camera submission as to his financial condition prior to the Court's resolution of the motion. That request, which was unaccompanied by any representation whatsoever as to financial hardship or the state of Mr. Sonnabend's financial affairs, is denied. Mr. Sonnabend has already prolonged this baseless, bad faith litigation unduly.

<span style="text-align:center">C<span style="font-variant:small-caps">ONCLUSION</span></span>

For the foregoing reasons, the Court grants, in part, Defendants' motion for recovery of attorneys' fees and related expenses and holds Jeffrey Sonnabend jointly and severally liable with Plaintiff for these amounts.

Defendants are hereby awarded $818,124.65 in attorneys' fees and nontaxable litigation expenses as against Plaintiff Worldwide Home Products, Inc., and Jeffrey Sonnabend. The liability of Plaintiff and Mr. Sonnabend for the payment of this award is joint and several. The award must be paid in full within thirty (30) days of the entry of this Memorandum Opinion and Order.  Interest on any unpaid amount shall thereafter accrue in accordance with 28 U.S.C. section 1961.

Defendants are directed to file on the ECF system, within fourteen (14) days of entry of this Memorandum Opinion and Order, the Exhibits to the Declaration of Edward F. O'Connor (docket entry no. 236), appropriately redacted to protect confidential third-party pricing information.  Personal identifiers and financial account information, including credit card information, bank account numbers, and tax ID numbers, must be redacted in accordance with Federal Rule of Civil Procedure 5.2.

This Memorandum Opinion and Order resolves docket entry number 235, and this case remains closed.

SO ORDERED.

Dated: New York, New York
          April 9, 2015

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge